(96 App. Div. 358.)

GILMOUR v. COLCORD.

(Supreme Court, Appellate Division, First Department.   July 13, 1904.)

1. MECHANICS' LIENS—FRAUDULENT CONVEYANCES.

Where B., being insolvent, bought and took title to property in the name of E. and S. to cover up B.'s interest and prevent his creditors reaching it, and then had contracts made for erection of buildings thereon, and while the work was being done sold the property to C., who knew of the facts, a finding that the conveyance was fraudulent, and so did not affect the mechanics' liens, is justified.

2. SAME—PERSONAL LIABILITY OF PURCHASER.

Where a purchaser of property on which buildings are being erected under contract, to her knowledge, does not have her deed recorded, and gives no notice of her purchase, converses with the contractor, and gives directions concerning what she wants done, and keeps herself fully informed of the nature of the work and its execution, a finding that with knowledge of all the facts she consented to the performance of the work, and thereby subjected herself to liability for the work done, is authorized.

Van Brunt, P. J., dissenting.

Appeal from Special Term, New York County.

Action by James Gilmour against Alice B. Colcord and others. From a judgment on a decision after trial without a jury, defendant Colcord appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

George W. Weiffenbach, for appellant.
James S. Alderdice, for plaintiff respondent.
James W. McElhinney, for respondents White & Peugnet.
Henry M. Brigham, for respondent B. Goetz Mfg. Co.

HATCH, J.   The action was brought to foreclose a mechanic's lien which had been filed against the premises for $3,876.89.   All other lienors, as well as persons who had held title to the premises while the building thereon was in process of construction, were made parties defendant.   On the 18th day of October, 1899, one Christian Blinn, who is the brother of the appellant, Alice B. Colcord, purchased the two vacant lots Nos. 375–376 Central Park West.   The title was taken in the name of his daughter, Etta Blinn, but she paid no part of the consideration therefor.   On February 10, 1900, Etta Blinn conveyed to Emma L. Smith. · Both Etta Blinn and Emma L. Smith held the property as dummies for Christian Blinn, and had nothing invested therein themselves.   As soon as Blinn secured control of the property, he proceeded to erect thereon a large apartment house, and under his plan of construction he made various contracts with different builders and mechanics for furnishing materials and for the different kinds of work necessary in such construction.   Blinn obtained the premises through the aid of a building loan mortgage, which was placed thereon.   On October 25, 1900, while Emma L. Smith was the nominal owner, she entered into a contract with Alice B. Colcord for the purchase and sale of the premises.   The purchase price was $170,000, payable as follows:   Cash paid upon the signing of the contract $10,000; con-

veyance of premises 160 West Seventy-Ninth street, valued at $20,000, and subject to a mortgage of $10,000; the conveyance of a hotel property at Kiamesha Lake, Sullivan county, N. Y., together with all furniture and equipment, $50,000. The premises conveyed were then subject to the building loan mortgage of $100,000, which makes up the sum agreed to be paid therefor. It was also agreed that the premises were to be delivered to Mrs. Colcord fully finished in every respect. It was covenanted that the conveyances were to be delivered on the 15th day of November, 1900, at which time the appellant, Colcord, would take full possession. Mrs. Colcord, upon her part, fully complied with the terms of her contract, but Blinn left unpaid all the bills of the various lienors, who are made parties to this action. She received her deed about December 27, 1900, but did not record the same until March 2d thereafter, about which time the Smith deed was also recorded. It appeared that after Mrs. Colcord entered into the contract to purchase the premises she frequently went to the building, and gave directions to Blinn as to how it should be finished in various respects. It is now the contention upon the part of the various lienors that she was a party to a fraudulent scheme, which was worked by Blinn and his two dummies to defraud the lienors out of the amount of their claims. The court found that the appellant was not, at the time she took her conveyance, nor at the time of the filing of the mechanic's lien, a bona fide purchaser or owner of the premises, but that her dealings with her brother in connection with the property were conducted and consummated with the intent to hinder, delay, defraud, and defeat his creditors and the creditors of his dummies, Emma L. Smith and Etta Blinn, having claims against the property, and otherwise justly entitled to liens thereon. The court further found that from October 25, 1900, the appellant frequently visited the premises while the work was in progress, talked with the contractors engaged in performing work thereon and furnishing materials thereto; that she at times disapproved of the work, made complaints and suggestions as to how it should be done, received the benefit of such labor and materials; and also consulted with her brother generally regarding the finishing of the house. The court further found that the appellant never disclosed or mentioned any change in the title, or that she had become the owner of the premises, but withheld her deed from record for several months, and consented that the mechanics continue their work and finish the contracts made with Etta Blinn under the charge of her brother; and that the materials and labor furnished under the contract and for extra work were so furnished with the full knowledge, consent, and approval of the appellant. It is claimed by the appellant that each and every of these findings are unsupported by the evidence in the case, and therefore that the judgment is required to be reversed.

It was said by Judge Selden in Williamson v. Brown, 15 N. Y. 354, after a very full review of the authorities in existence at that time:

"If these authorities are to be relied upon—and I see no reason to doubt their correctness—the true doctrine on this subject is that, where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the extent of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior

right, or to have been guilty of negligence equally fatal to his claim to be considered as a bona fide purchaser. This presumption, however, is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence upon his part."

This rule has received uniform approval since it was announced. Anderson v. Blood, 152 N. Y. 285, 46 N. E. 493, 57 Am. St. Rep. 515; Kingsland v. Fuller, 157 N. Y. 507, 52 N. E. 562. It is undisputed that Christian Blinn, the brother, was insolvent, and that many judgments had been entered against him, which were wholly uncollectible. That the title to this property was taken in the name of Etta Blinn, and subsequently transferred to Mrs. Smith for the purpose of covering Christian Blinn's interest therein, and preventing creditors from reaching it. This is admitted by Christian Blinn, his daughter, and Mrs. Smith. So far, therefore, as they were concerned, the scheme was fraudulent to protect the property for the beneficial use and enjoyment of Christian Blinn, and protect it in his favor against his creditors. The question, therefore, with respect to Mrs. Colcord, comes to rest upon her knowledge of the transactions, and the intent with which she participated therein. She testified that she knew that her brother was insolvent, that he could not hold property in his own name, and that the property was held by others for his benefit; and she knew that contracts were in existence for the completion of the building by contractors, and that they were entered into by the persons who were acting for Blinn, and in his interest. So that at the time when she purchased the premises she had actual knowledge of substantially all existing conditions, the nature of her brother's interest therein, and how he was protected from his creditors so as to be enabled to deal with the property. Aside from her knowledge upon the subject, there is much other testimony bearing upon the bona fides of her purchase. The contract of purchase which she made with Christian Blinn recited that the payment down of $10,000 was on the signing of the contract. The fact is that it was not paid on that date (October 25, 1900), but was postponed until December 15, 1900. The deed which she received was executed and delivered December 27, 1900, but it was withheld from the record until March 2, 1901, as it appears at the instance of Blinn; and during this period, nor at any other time, was any notice given of the interest of Mrs. Colcord in the premises, or that any change of title had been made, save such constructive notice as arose at the time of the recording of the deed. There are many other facts and circumstances in the case to which it is unnecessary to advert in this opinion, but which the court had before it for consideration at the time of rendering its decision. The statute makes void all conveyances made with intent to hinder, delay, or defraud creditors. It contains a saving clause that its provisions in this respect shall not be construed in any manner to impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his grantor. It was said by Judge Bradley, in writing upon this question: "The burden was upon the purchaser to relieve herself from the effect of the fraudulent intent of her grantor by proving that she was a purchaser for a valuable consideration." Linneman v. Bieber, 85 Hun, 477, 33 N. Y. Supp. 129.

The authority which he cited (Starin v. Kelly, 88 N. Y. 418) abundantly supports the holding. It therefore appears that Blinn's intent in procuring the transfer of the property from Mrs. Smith to Mrs. Colcord was to secure for himself the benefit of the transaction, and the court was fully justified in reaching the conclusion that Blinn's purpose was to hinder and delay his creditors in the enforcement of any claim against him. This being his evident intent, the presumption arose that such also was the intent of the appellant, and upon her was devolved the burden of showing that she was not only a purchaser for value and in good faith, but that she had no notice or knowledge of facts which put her on inquiry as to the intent of Blinn. Manifestly, when she testified that she was fully informed concerning Blinn's situation, and how he held his property, the court had before it facts from which it was authorized to find that the purchase of the property was not a bona fide purchase, and that Mrs. Colcord took with full notice of Blinn's intent. Not only upon the facts, therefore, but upon the presumption which arises out of the transaction, the finding of the court is clearly sustained. In addition to this, it appeared that at the time when Mrs. Colcord purchased the building it was in an unfinished state. She had visited it, and informed herself concerning its then unfinished condition. She must be held to have known that much work was to be done by somebody before it could be delivered to her in a completed state. Testimony has been given that she conversed with plaintiff's assignor, who was performing work, and that she gave directions concerning what she wanted done, consulted with Blinn about the progress that was being made, and kept herself fully informed of the nature of the work and its execution. Under such circumstances the court was authorized to find that, with knowledge of all the facts, she consented to the performance of the work upon the building, and thereby subjected herself to liability for the work thus done. National Wall Paper Co. v. Sire, 163 N. Y. 123, 57 N. E. 293. Nothing contained in Beck v. Catholic University, 172 N. Y. 387, 65 N. E. 204, 60 L. R. A. 315, conflicts with this rule. Therein the vendor of real property under an executory contract of purchase, which recited that the property was conveyed "for the purpose of erecting buildings thereon," was held not to be such a consent as would charge the vendor or the property with liability for mechanics' liens for buildings erected thereon after the purchaser had made default and the vendor was compelled to retake the property. Therein it appeared that there was no knowledge beyond the fact that the purchaser contemplated the erection of buildings thereon, and it was held that this was not the consent of the owner contemplated by the law in order to charge him with liability therefor. The difference between the present case and that is apparent, as is also the difference between it and the National Wall Paper Co. Case, supra. It is true that the appellant gave much evidence—and some of it quite convincing—that she was in fact a bona fide purchaser of the property; that she knew nothing about the contracts, and gave no directions or made suggestions in respect to the work being done, its progress or otherwise; and it may be that a finding of the court holding that she was a bona fide purchaser, and there-

fore not liable for these liens, would find support in the testimony. Such, however, is not the question which confronts us, for within the rules of law which we have cited the court was authorized to find that the transaction was fraudulent in fact and in law, and to render judgment accordingly. It follows from these views that the judgment finding that all liens filed against the property by other lienors than the plaintiff's assignor are valid and subsisting liens, and the judgment to that effect must be affirmed. As to the lien of the plaintiff, we think none was acquired. The notice of lien contains the same defect which was held to render the lien invalid in Bradley & Currier Co. v. Pacheteau, 71 App. Div. 148, 75 N. Y. Supp. 531. Upon appeal (175 N. Y. 492, 67 N. E. 1080) the judgment announced by this court was reversed. The effect of such reversal is fully discussed in the New Jersey Steel & Iron Co. v. Robinson, 85 App. Div. 512, 83 N. Y. Supp. 450. That case was also before this court in 74 App. Div. 481, 77 N. Y. Supp. 547. Upon appeal to the Court of Appeals that court held the lien of Barr, Thaw, and Fraser and the American National Exchange Bank was defective, and affirmed the judgment therein to that extent. 178 N. Y. 82, 71 N. E. 1134. Plaintiff's lien must, therefore, be held invalid. It does not defeat the recovery, however, of a personal judgment in his favor against the appellant, as such was the result of the decision in Bradley & Currier Co. v. Pacheteau, 175 N. Y. 492, 67 N. E. 1080.

It follows that the judgment should be affirmed as to the defendants Howard White and Jules J. Peugnet and the B. B. Goetz Manufacturing Company, with a single bill of costs, and personal judgment against the appellant should be ordered in favor of the plaintiff James B. Gilmour, without costs of this appeal to either party. All concur except VAN BRUNT, P. J., who dissents as to personal judgment.