EDITH HELEN ENTHOVEN, Plaintiff, *v.* EDWARD J. ENTHOVEN and Others, Defendants.

Supreme Court, Special Term, Queens County, March 30, 1938.

*Seligsberg & Lewis [Leonard L. Berliner* of counsel], for the plaintiff.

*Leon Engelsberg,* for the defendants.

DALY, J.   The plaintiff is the former wife of Edward J. Enthoven, the defendant, who made the transfers of the properties.   The defendant Grahame Enthoven is the son of this marriage.   The defendant Grace Clymer Enthoven is the present wife of the defendant Edward J. Enthoven, to whom he was married on February 10, 1937.   The latter two defendants are the transferees of the properties involved.   The remaining three defendants are members of a firm in which the defendant Edward J. Enthoven is alleged to have a partnership interest and capital investment, which it is claimed was also transferred fraudulently.

On October 11, 1921, the plaintiff and her former husband entered into a separation agreement, providing, among other things, for the payment of $140 per month to the plaintiff, in full for her support and maintenance until her death or remarriage. Subsequent to the making of this agreement the parties were divorced in the State of New Jersey, but the agreement, pursuant to its terms, continued to remain in force and effect.   By an agreement dated May 1, 1935, the monthly allowance of $140 was reduced to $100 for a fixed period of time, and to secure the performance of the agreement as modified the sum of $1,200 was deposited with the attorneys for the plaintiff, to be drawn upon in the event of the defendant's failure to pay the installments in default, said deposit at all times to be maintained in at least the sum of $1,200, and upon the death of Mr. Enthoven this deposit or any balance then remaining, to be turned over to the plaintiff.

Four causes of action are set forth in the complaint.   The first and second are based upon two judgments recovered by the plaintiff in July, 1937, predicated upon the breach of the agreement for support, dated October 11, 1921.   The third cause of action is to recover the sum of $420 by reason of certain defaults under the

agreement of separation as modified, as a result of which the deposit of $1,200 was depleted. This cause of action seeks to replenish the deposit of $1,200, as required by paragraph 3 of the memorandum between the parties, dated May 1, 1935, and also to set aside the transfers alleged to be fraudulent. The fourth cause of action is based upon section 279 of the Debtor and Creditor Law, which gives creditors whose claims have not matured, the remedy of setting aside fraudulent conveyances. It is there alleged that the plaintiff, by reason of the agreement of October 11, 1921, as modified by the agreement of May 1, 1935, is a creditor of an unmatured claim and entitled to set aside the transfers and conveyances alleged in the prior causes of action.

It appears that the sufficiency of these causes of action has been adjudicated by an order of this court dated October 11, 1937, which denied the defendants' motion to dismiss the complaint under rule 106 of the Rules of Civil Practice.

The property which the defendant Edward J. Enthoven transferred and the grantees of such transfers are as follows:

(1) A house and lot at No. 2 Point Circle, Malba, Long Island, which was conveyed by a deed dated and acknowledged the 15th day of January, 1937, and recorded on the 23d of June, 1937. By this deed the grantor conveyed to Grace Clymer (later to become the wife of the defendant Edward J. Enthoven) and Grahame Enthoven, his son, the following interest in the property, subject to an existing mortgage of $6,000:

" To have and to hold the premises herein granted only for and during the natural life of the said Grace Clymer, party of the second part, and her assigns, and upon her death then unto the said Grahame Enthoven, his heirs and assigns forever.

" The said party of the second part shall have the power to make leases of the said premises for terms not exceeding three years."

(2) The capital investment, representing the grantor's partnership interest in the firm of Chambellan, Berger & Welti, certified public accountants, of the then value of $8,500, which was transferred to the said Grace Clymer by a bill of sale dated and acknowledged the 15th of January, 1937.

(3) At about the same time there was transferred to the said Grace Clymer a 1934 Plymouth automobile, $1,500 in a stock brokerage account with J. W. Gould & Co., and by a bill of sale, dated and acknowledged the 15th of January, 1937, there was transferred to the said Grace Clymer the household furniture, rugs and other personal property located at the dwelling at No. 2 Point Circle, Malba, Long Island.

The answer of the defendant Grahame Enthoven denies any knowledge or information sufficient to form a belief with respect to all of the allegations of the complaint, including those alleging the transfer of the real property in remainder to him.

The answers of the defendant Edward J. Enthoven and his present wife, the defendant Grace Clymer Enthoven, consist of general denials and defenses, *first*, that there was nothing due to the plaintiff at the time of the transfers, and *second*, that prior to their marriage on February 10, 1937, they entered into an ante-nuptial agreement in writing without intent to defraud creditors, and that after the marriage the properties were duly delivered pursuant thereto. In the answer of the defendant Edward J. Enthoven there is also a counterclaim which alleges the deposit of the $1,200 as security and that at the time of the commencement of the action there was a balance of $780 remaining, which sum is more than sufficient to pay the judgments alleged in the first two causes of action.

The answer of the defendants Chambellan, Berger & Welti consists of a general denial.

In the reply to the counterclaim it is admitted that there was a balance of $780 on hand at the commencement of the action, but the defense of *res adjudicata* is alleged in that in an action in the Municipal Court, commenced on or about the 10th of May, 1937, the defendant Edward J. Enthoven interposed in his answer there the same facts which he now interposes in his counterclaim with reference to the deposit of $1,200; and that the issues raised by the pleadings were duly adjudicated in favor of the plaintiff in that it was there determined on the merits that the plaintiff was entitled to judgment without first using the collateral security so deposited.

In disposing of the merits of this action, it is necessary to determine whether the plaintiff, by reason of the agreement of October 11, 1921, was a creditor of the grantor, for it appears clear that at the time the ante-nuptial agreement was executed and the transfers made, there were actually no defaults under the terms of the separation agreement.

A creditor is defined by section 270 of the Debtor and Creditor Law as " a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

A debt is defined by said section as including " any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

In discussing section 270 *et seq.* of the Debtor and Creditor Law, Mr. Justice CARDOZO stated in *American Surety Company* v. *Conner* (251 N. Y. 1, 7) as follows: " The act is explicit that a

creditor may now maintain a suit in equity to annul a fraudulent conveyance, *though his debt has not matured.* * * * The act in its definition of a creditor seeks a rule of uniformity, and in so doing levels distinctions that at times had been the refuge of the dilatory debtor." (Italics mine.)

No case in point in this State has been brought to my attention.

However, in *Moore* v. *Moore* (143 App. Div. 428; affd., 208 N. Y. 97) the court held that the remedies of security and sequestration for the payment of alimony apply not only to that which has accrued but also to alimony *which will accrue.*

In *Ga Nun* v. *Palmer* (216 N. Y. 603) there was a promise by the decedent to pay the plaintiff seventy dollars a month for the support of the house, etc., as long as she lived, and that upon her death the promisee was to have $20,000 to be found in a safe deposit vault in New York. In an action by the plaintiff to set aside as fraudulent subsequent transfers of property made by the decedent, the court held the plaintiff to be a creditor.

Another line of cases in which the courts have upheld actions to set aside transfers by reason of a *future right* are those where a future husband, in contemplation of marriage, has, by means of subterfuge, disposed of his property with the intention that his future wife be deprived of her rights in his estate upon his death, pursuant to the Decedent Estate Law, section 18, subdivision 7, section 82. (*Le Strange* v. *Le Strange*, 242 App. Div. 74; *Rubin* v. *Myrub Realty Co., Inc.*, 244 id. 541; *Bodner* v. *Feit*, 247 id. 119.)

In *Livermore* v. *Boutelle* (77 Mass. 217) it was held that a conveyance of real estate by a husband, after he had committed adultery, though before his wife brought an action for divorce, is void if made to prevent her from recovering such alimony as the court may decree to her.

In 19 C. J. (§ 734, p. 318) it is stated: " A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony, is fraudulent, and may be set aside, unless the purchaser took without notice and for value." And at page 319: " If after a judgment or decree for alimony the husband conveys property to defeat the wife's judgment or decree, the conveyance is fraudulent and may be avoided."

The court is of opinion that the plaintiff was, by reason of her agreement with her former husband, a creditor within the meaning of section 270 of the Debtor and Creditor Law. Under that agreement he was absolutely liable to pay, until her death or remarriage, a fixed sum at certain definite periods. She had thereunder " the right to require the fulfillment " of an obligation fixed in a contract. (*Thomson* v. *Crane*, 73 Fed. 327.) The fact that her right of sup-

port from her former husband was fixed by a separation agreement instead of by a decree of separation does not, in the opinion of the court, take this case out of the principles referred to in the above-cited cases.

In *Demarest* v. *House* (36 N. Y. Supp. 291), decided by the Appellate Division of this Department, there is the following statement which bears directly upon the point involved herein: " Assuming, even, that the motive of Isaac E. House in making the sales *was to prevent his wife from receiving any alimony in any suit she might commence therefor*, that fact would not invalidate the sales, *unless the fact was known to the grantees and they participated in the fraud.*"    (Italics mine.)

Applying this principle to the situation at bar, if the transfers herein sought to be set aside were made to prevent the plaintiff from receiving future installments of alimony fixed by the agreement of separation, and that fact was known to the grantees, and they participated in the fraud, the plaintiff may recover.

Quoting *Ga Nun* v. *Palmer* (*supra*, at p. 612): " The transfers may, of course, have been fraudulent even though there was a consideration.    (*Baldwin* v. *Short*, 125 N. Y. 553; *Galle* v. *Tode*, 148 N. Y. 270, 279; *Greenwald* v. *Wales*, 174 N. Y. 140.)    Their validity turns then upon the intent with which they were given or received."

Ante-nuptial agreements are valid and constitute good consideration for conveyances.    (*De Hierapolis* v. *Reilly*, 44 App. Div. 22; affd., 168 N. Y. 585; *Kerker* v. *Levy*, 140 App. Div. 428; affd., 206 N. Y. 109.)    But, as stated in 19 C. J. (§ 734, p. 319): " Fraudulent ante-nuptial conveyances have been set aside and the property applied to the satisfaction of a judgment for alimony."

After giving the testimony and documentary evidence careful consideration, the court is of opinion that the circumstances and their coincidences involved in the transfers herein attacked cannot be explained in any other way than that the entire arrangement was entered into with the intent of stripping the defendant Edward J. Enthoven of all property for the purpose of depriving the plaintiff of her rights pursuant to the agreement of separation of October, 1921, as modified.

First of all, the transfer of the Plymouth automobile, jewelry and $1,500 in the stock brokerage account is not even referred to in the ante-nuptial agreement and was, therefore, transferred without any consideration whatsoever.    Nor was there a scintilla of proof that the remainder interest in the real estate to the son was based upon any consideration, or that he knew that he had become the grantee of such an interest.

The court is satisfied from all the evidence in the case that the defendant Grace Clymer Enthoven was well aware of the obligation of Edward J. Enthoven to his former wife, the plaintiff herein, pursuant to the separation agreement, and that the ante-nuptial agreement and the transfer of property to her would prevent the plaintiff from collecting the payments due and would leave her remediless.

The documents evidencing the transfers appear to have been executed on January 15, 1937, and acknowledged before a notary public on that day. It was testified that they were signed by the defendant Edward J. Enthoven in the office of his attorney on that day and left with him in escrow. Yet the ante-nuptial agreement was never acknowledged before a notary public. Peculiarly, it is the only document executed on that day which is not so acknowledged and which was not signed in the office of the attorney.

The deed to the house in Malba, which was executed on January 15, 1937, was not recorded until June 23, 1937, after an action had been commenced in the Municipal Court for the recovery of one of the installments due under the separation agreement. It is also significant that the insurance policies covering the real estate were not changed to show the conveyance until June 26, 1937.

So far as the transfer of the automobile is concerned, the grantor procured license plates therefor in December, 1936, in his own name. Within two weeks he made the transfer to the defendant Grace Clymer Enthoven, who was not even a licensed operator, without even a semblance of consideration.

The transfer of the capital investment account with the defendants Chambellan, Berger & Welti is peculiar in itself. The defendant Edward J. Enthoven was a member of this firm of certified public accountants in which, admittedly, he had a capital investment of $8,500. In a purported bill of sale, unilateral in character, he made an assignment of this interest to his future wife, whom he designated as the "party of the second part." Though this instrument was not executed by this "party of the second part," the following is found in the body thereof: "The party of the second part, in accepting the capital investment transferred to her hereunder, further promises and agrees that as long as the said capital investment remains with the aforesaid firm of Chambellan, Berger & Welti and remains undistributed to the party of the second part, the party of the second part agrees that any capital losses which ordinarily would be charged against the capital investment of the party of the first part if this transfer had not been made, may be charged against the said capital investment transferred

hereunder to the party of the second part, and in like manner, any capital gains which ordinarily would be added to the said capital investment if this transfer had not been made, shall be added to the capital investment transferred hereunder, and shall belong to the party of the second part."

Just what relationship was established by this assignment is not clear, although *later*, in a letter dated June 30, 1937, signed by Edward J. Enthoven and by Chambellan, Berger & Welti by R. J. Welti, an understanding between them, alleged to have been made in January, 1937, was confirmed, allegedly because the attorneys for the plaintiff raised some question as to the relationship. It was there stated that the partnership would be dissolved as of March 31, 1937, and Edward J. Enthoven was to continue merely as an employee of the firm at sixty dollars a week, subject to termination by either party at will.

From all of the above and from other evidence in the case it is clear that the transfers and conveyances herein were neither *bona fide* nor made in due course, but were deliberately contrived, with the knowledge of the defendant Grace Clymer Enthoven, to carry the properties beyond the reach of the court in the enforcement of plaintiff's rights.

As to the counterclaim to which the defense of *res adjuticata* has been interposed, the judgment roll in the Municipal Court, Borough of Manhattan, First District, Index No. 21863 (1937), clearly establishes that that court made an adjudication, for in granting summary judgment the court stated specifically: " The modification agreement, Paragraph 3, gives plaintiff right to sue for ' securities sold ' and I construe the meaning of the agreements taken together, as allowing her in her own right to sue to replenish the fund."

Accordingly, judgment on the merits is granted to the plaintiff, with costs, and the counterclaim of the defendant Edward J. Enthoven is dismissed.

Settle judgment on notice.