Anthony M. Livoti, J.
By a notice of motion dated May 25, 1962, the plaintiff moved for an order appointing a receiver pendente lite of the properties which are subject to this action, pursuant to article 10 of the Debtor and Creditor Law, on the ground that there is danger that said properties will be removed beyond the court’s jurisdiction during the pendency of the action and will be materially injured or destroyed before a final judgment can be obtained.
The complaint in this consolidated action contains three causes of action. The first cause of action is against defendant Mark Matthews, etc., for damages resulting from fraud. Plaintiff did not discover the facts constituting the fraud until June 11, 1958. The second cause of action is against all of the individual defendants herein for damages resulting from the fact that they conspired together, willfully, intentionally and knowingly, to assist and abet defendant Mark Matthews, etc., to make intentional false and fraudulent representations regarding his true net worth, consisting of real estate, stocks, bonds, investments and businesses throughout the United States, to the plaintiff, for the purpose of inducing said plaintiff, relying upon such representations made by said defendant Mark Matthews, etc., to accept the terms of property settlement agreements which are attached to the complaint, all to her damage, and plaintiff did convey to said defendant, pursuant to said agreements, real estate owned solely by plaintiff which was valued at approximately $50,000 at the time of said conveyance. The third cause of action herein is in the nature of a creditor’s action. It alleges an indebtedness of defendant Mark Matthews, etc., to the plaintiff which he has intentionally failed to pay, and alleges transfers of properties by defendant Mark Matthews, etc., to one or- more of the defendants, and “ [t]hat the defendants, other than the defendant ~ivr at?.tt matthews eto. received and accepted the aforesaid properties and funds described in paragraphs ‘ thirty-second ’ through ‘ thirty-eifth ’ inclusive herein, with knowledge of the wrongful intent and purposes of defendant mark matthbws etc.” and “were made with the intent and purpose * * * to place the properties and funds of defendant mark matthbws *920 etc. beyond the reach of the plaintiff and to hinder, delay and defraud the plaintiff ’ ’.
The first cause of action is set forth in the allegations numbered “First” through “Fourteenth”; the second in paragraphs numbered “ Fifteenth ” through “Eighteenth”; and the third in paragraphs numbered ‘ ‘ Nineteenth ’ ’ through “ Thirty-Ninth Paragraph “ Fifteenth ” of the second cause of action realleges as part thereof paragraphs “ First ” through “ Fourteenth ” of the first cause of action, and paragraph “Nineteenth” of the third cause of action realleges as part thereof paragraphs “First” through “Fourteenth” of the first cause of action and paragraphs “Fifteenth” through “Eighteenth” of the second cause of action. The complaint further seeks the appointment of a receiver pendente lite and that each of the defendants be restrained from transferring, incumbering, and in any way disposing of the properties and moneys aforesaid.
The sufficiency of these causes of action has been adjudicated by an order of this court dated December 2, 1960, which denied defendants’ motions to dismiss the complaint under subdivision 4 of rule 106 of the Rules of Civil Practice (26 Misc 2d 864), and no appeals have been taken by defendants from said adjudication. Thus, this is the law of the case.
The plaintiff undoubtedly has a right to assert her third cause of action under article 10 of the Debtor and Creditor Law (§§ 270-279) notwithstanding that her claim against defendant Mark Matthews, etc., was unliquidated and not matured to judgment (American Sur. Co. v. Conner, 251 N. Y. 1; Enthoven v. Enthoven, 167 Misc. 686, affd. 256 App. Div. 813; Buttles v. Smith, 281 N. Y. 226, 236) and, in connection with such causes of action, she is empowered by statute (Debtor and Creditor Law, art. 10, § 279, subd. b) to seek the appointment of a receiver pendente lite to take charge of the real and personal property alleged to have been fraudulently conveyed for the purpose of placing the said properties and funds of said defendant beyond the reach of the plaintiff and to hinder, delay and defraud said plaintiff. Moreover, the said conveyances are sought to be set aside, pursuant to article 10 of the Debtor and Creditor Law, upon the ground that they were transferred fraudulently and without true and equitable consideration.
In a dictum by Judge Cardozo in American Sur. Co. v. Conner (supra), on page 7, is the following language: “ The act is explicit that a creditor may now maintain a suit in equity to annul a fraudulent conveyance, though his debt has not matured. It is not believable that a creditor with a debt already due was *921 to be placed in a less favorable position, or beset by greater obstacles. For the one as for the other, the path is to be cleared of harassing impediments to the swift pursuit of justice. * * * He [the creditor] may seek the aid of equity, and without attachment or execution, may establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit.” This the plaintiff has chosen to do in asserting her third cause of action under article 10 of the Debtor and Creditor Law.
Fraudulent transfer or conveyance is an old device for the purpose of cheating creditors. To destroy its efficacy as much as possible a new article to the Debtor and Creditor Law was enacted by chapter 254 of the Laws of 1925, known as article 10 of the Debtor and Creditor Law (§§ 270 to 281), entitled ‘ ‘ Fraudulent Conveyances ’ ’. Section 276 declares invalid every conveyance made with an actual intent to defraud creditors. By sections 278 and 279 creditors whose claims have matured or have not matured may have a fraudulent conveyance set aside. But though these remedies were given to the creditor they proved inadequate to discourage indulgence in fraudulent and dishonest practices of this kind. 1 ‘ A conveyance is fraudulent when the grantor, even though solvent, is motivated by an intent to hinder, delay or defraud his creditors ” (emphasis supplied) (Pattison v. Pattison, 301 N. Y. 65, 73-74; Gunsberg v. Takabi Corp., 20 Misc 2d 640, 641).
Section 270 of the Debtor and Creditor Law contains various definitions. The word ‘1 Conveyance ’ ’ is defined as ‘ ‘ every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance ”. The word “ Creditor ” is defined as “ a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent ”.
The crux of this cause of action, by the very nature of the language used in the complaint, is placed squarely within the province of sections 276, 278 and 279 of the Debtor and Creditor Law. It further revolves around the allegations that the disposition and transfer of the assets of the individual defendant Mark Matthews, etc., were made to one or more of the other defendants herein with actual intent and purpose to place such assets of defendant Mark Matthews, etc., beyond the reach of the plaintiff and to hinder, to delay and to defraud her.
The plaintiff, the former wife of defendant Mark Matthews, etc., entered into a separation agreement whereby defendant Mark Matthews, the former husband, had agreed to pay the plaintiff a fixed monthly sum until her remarriage, which he *922 was absolutely liable to pay. (See Matter of Matthews v. Matthews, 15 Misc 2d 419, 15 Misc 2d 443,11 A D 2d 813, 8 N Y 2d 1137, 9 N Y 2d 790, 23 Misc 2d 320, 27 Misc 2d 548, 14 A D 2d 546.) When defendant Mark Matthews defaulted in payments to the plaintiff, the plaintiff became a “ Creditor ” under the Debtor and Creditor Law, since her rights were predicated upon a contractual obligation. The plaintiff, therefore, has “ the right to require the fulfillment ’ ’ of the obligation fixed under the said separation agreement (Thomson v. Crane, 73 F. 327), to sue thereon for any default in payment. Such rights constitute the plaintiff as a creditor of defendant Mark Matthews, etc., whether her claim is matured or unmatured in accordance with sections 278 and 279 of the Debtor and Creditor Law. (Kafalian v. Kafalian, 27 Misc 2d 1065, 1066; Eccles v. Hutchinson, 28 Misc 2d 412; Enthoven v. Enthoven, supra; Ga Nun v. Palmer, 216 N. Y. 603.)
The answer of the defendants consists of general denials of all the material allegations contained in the verified complaint except they admit paragraph “ Thirty-Second ” of the complaint which states, in part, “ [t]hat prior to November 1,1958, defendant mark matthews etc., was and for many years prior thereto had been the sole and equitable owner of a business being known and conducted under the assumed name of rapid messenger service ’ ’. The answer also consists of defenses, first, that plaintiff submitted an affidavit sworn to the 11th day of July, 1947, in which she had knowledge that the fraudulent sale of Rapid Messenger Service never took place. However, paragraph “ Thirteenth ” of the complaint states “ [tjhat the plaintiff did not discover the facts constituting actual fraud until testimony was given in the Children’s Court of the State of New York in Nassau County by defendant Joseph schusheim etc. on June 11, 1958 and until when further testimony was given in the Children’s Court in Nassau County by defendant mark matthbws etc. on May 15, 1959.” Defendants’ second defense is that the summons in this action was served upon defendant Mark Matthews as he was leaving the courthouse on May 15, 1959, at the hearing in the Children’s Court of Nassau County. This defense has already been adjudicated by this court in another action, based upon the same facts, by the same parties, which is reported in Matthews v. Matthews (30 Misc 2d 681, 683; see, also, Greene v. Weatherington, 301 F. 2d 565).
The situation presented by the papers before this court is a complex and unusual one. The plaintiff has submitted documentary evidence consisting of photostatic copies of checks and lengthy excerpts of minutes of sworn testimony by defendants *923 herein as given in the Children’s Court of Nassau County and before the Hon. Frank F. Adel, Special Beferee of this court, pursuant to the order of Mr. Justice Hogan, and by other examinations before trial, all of which glaringly spotlight the inconsistencies and contradictions of the defendants’ various testimonies together with their own admissions therein of highly suspect actions on their part.
As to the properties which are subject to this action, for which plaintiff seeks to have the appointment of a receiver pendente lite:
(1) As to Bapid Messenger Service, the moving papers submit the following documentary evidence in support of the instant motion:
Exhibits “B” and “ C ” of the complaint herein (separation agreement prepared by the attorney for the defendants herein, which is part of this action) was accepted by the plaintiff “ based upon the belief that the terms and conditions of the Agreement are fair, adequate, equitable and provident, and for no other reasons ”, the plaintiff relying upon an examination before trial had of the defendant Mark Matthews, etc., in this court pursuant to an order of Mr. Justice Cortland Johnson, prior to the execution of Exhibits “B” and “ C ” of the complaint, in which he testified that he had sold his sole ownership of the business known as Bapid Messenger Service, with its principal office at New York, N. Y., one of the properties subject to this action, to his sister, defendant Florence Wayne, and to his brother, defendant Joseph Schushein, also known as Joseph Matthews.
By the testimony of defendant Mark Matthews, etc., and Joseph Schushein (Matthews) regarding the said sale of Bapid Messenger Service, the said defendants gave the following testimony in this respect at different times and places, which contradict each other, as follows (Testimony of defendant Mark Matthews, etc., given pursuant to the order of Mr. Justice Cortland Johnson, supra):
Q. 281a. Since January 1, 1947 and until this date, what have been the gross sales of Rapid Messenger Service in New York? A. I don’t know.
Q. 282a. Do you own that business today ? A. No.
Q. 283a. When did you sell that business? A. December 31, 1946.
Q. 284a. To whom? A. To Joseph Schusheim and Florence Wayne.
Q. 285a. The Joseph Schusheim referred to, Mr. Matthews, is the same party referred to in prior questions in this Examination as your brother, is that right? A. Yes.
Q. 286a. And the Florence Wayne referred, will you tell us who she is? A. My sister.
*924 Q. 288a. And how much did you receive for the business sold December 31, 1946. [To Joseph Schusheim and Florence Wayne.] A. $40,000.00 of which $15,000.00 was in cash and $25,000 in notes.
Q. 289a. And did both of the purchasers execute the notes referred to by you. A. Yes.
* $ *
Q. 335a. By the way, you did not advance or give any moneys to your sister Florence and your brother, Joseph, just prior to the purchase by them from you of Rapid Messenger Service. A. No, I did not.
Q. 336a. And you don’t know, do you, now where they obtained these moneys1 A. No, I do not. (Emphasis supplied.)
On April 25, 1960, defendant Joseph Schusheim, also known as Joseph Matthews, was examined before trial pursuant to the order of Mr. Justice Hogan, a Justice of this court, before the Hon. Frank F. Adel, a Special Referee of this court, and he gave the following testimony:
Q. And then did you and your sister [Florence Wayne, etc. defendant herein] transfer the business back to Mark Matthews ? A. Did we transfer it back?
Q. Yes. A. Most likely.
Q. Well, don’t you know, Mr. Matthews? A. Bure. As I said before, I was just a token owner. I didn’t follow the details. I had my own worries to worry about.
Q. And was your sister also a token owner of the business during this time1 A. Sure, she was. (Emphasis supplied.)
# # #
Q. Now, when you transferred the business back to Mark Matthews a short time afterwards, as you have testified, was there any consideration paid to you for such transfer? A. I told you before that the consideration he paid for, and he laid the money out in the beginning.
Q. In other words- A. It was a token ownership. Again I am implying it and saying it directly to you. It was a token ownership * * *. (Emphasis supplied.)
Q. Did you have any occasion to discuss this token transfer of Rapid Messenger Service to you and your sister with your brother Mark Matthews ?
* * *
A. Did I have any conversation — no. It was all taken care of the way he wanted to between him and his attorney and the accountant. Whatever they agreed to, I was only too happy to go along with. (Emphasis supplied.)
Paragraph “ Seventeenth (d) ” of the complaint states:
That defendant mark Matthews etc., after the alleged transfer of Rapid Messenger Service in New York to his brother, defendant Joseph schusheim etc., and to his sister, defendant Florence watne, etc., remained the authorized signer of checks in behalf of Rapid Messenger Service in New York, signing the assumed name “Joseph Matthews” as his signature, which signature was honored by all banks having accounts of Rapid Messenger Service in New York, which was done solely for the purpose of hindering, delaying, concealing his assets from and defrauding the plaintiff.
On June 9, 1958, defendant Mark Matthews, etc., after being absent from the State of New York for approximately eight *925 years, was served with a summons to appear in the Children’s Court in Nassau County for insufficient support of his three infant children. On the return date, defendant Mark Matthews disregarded the summons of the Children’s Court by deliberately sailing for Europe on the honeymoon of his third marriage and, in his place, sent his brother Joseph Schusheim, defendant herein, with his attorney herein, who appeared in Children’s Court and attempted to have the said summons set aside, which was denied. During the course of the said hearing the presiding Judge in Children’s Court instructed the defendant Joseph Schusheim herein to testify under oath; and he gave, in part, the following testimony:
Q. You’re a brother of Mark Matthews, the respondent in this hearing ? A. I am.
Q. Are you connected with Rapid Messenger Service? A. No, I’m not.
Q. Did you sign cheeks for the Rapid Messenger Service? A. I never signed a check in the last eight years. I once was a member but not recently. Not since I left the army.
Q. Did you sign cheeks prior to eight years ago? A. I was once a member of the firm but not recently.
Q. I show you this check signed by a “Joseph Matthews”. Is that your signature? A. It’s 1948.
Q. Is that your signature? A. Yes, I imagine it is.
Q. You imagine ? A. Yes, it was in ’48, anyway.
Q. I asked you a question: Did you sign that check?
* * *
the court : What’s his answer ?
witness : I wouldn’t know. It’s way back in ’48.
the court: You don’t know if it’s your signature?
witness : No, it looks like mine. It’s in ’48, ten years ago.
Q. But your signature is the same today as it was ten years ago? This is your brother’s signature, isn’t it? A. I wouldn’t know if it’s his signature. I might have given him permission.
Q. It’s not your signature, is it? You just said “no.” A. I owned the company at that time.
Q. Answer the question. You didn’t sign that, did you? A. I don’t think I did, no.
mr. taylor: I offer it in evidence. It’s a $3,000. cheek made payable to Mark Matthews and is signed by “ Joseph Matthews ” and there is no question that Mark Matthews signed it.
Defendant Mark Matthews, etc., herein, testified on May 15, 1959, at the Children’s Court, before the Honorable Walter L. Terry, a County Judge acting as Children’s Court Judge, and gave the following testimony:
Q. Have you ever been known as “ Joseph Matthews ” ? A. No.
Q. Never? A. Never.
Q. Mr. Matthews, I show you Petitioner’s Exhibit A of the Hearing of June 11, 1958, consisting of a check dated February 9, 1948, drawn on the Corn *926 Exchange Bank & Trust Company, payable to Mark Matthews, for $3,000.00, signed Rapid Messenger Service, by Joseph Matthews, and I ask you whether or not this is your signature ? * * * Is that your signature, Mr. Matthews, on the check? A. Yes.
Q. How does it read? A. But I am never known as “ Joseph Matthews ”.
Q. But you signed checks under the name of Joseph Matthews ? A. No. I may have signed this cheek.
Q. Did you, or didn’t you? Is it your signature, or isn’t it? A. Yes, I signed this. My brother hasn’t sued me for it yet.
Q. Is it your signature, Mr. Matthews? A. It is my signature.
Thus, under oath, he finally admitted that he had signed eight cheeks, among others, with indorsement thereto, as “ Joseph Matthews ” on behalf of the Rapid Messenger Service.
Paragraph ‘1 Thirty-third ’ ’ of the complaint states:
That as a result of the testimony of defendant Joseph schusheim etc. herein in the Children’s Court of Nassau County in a proceeding entitled “ Matter of Matthews” on June 11, 1958 and defendant schusheim’s revelation therein of the fraud committed upon the plaintiff by all of the defendants except the corporate defendants herein, defendant mark Matthews, etc., knowing that an action was about to be commenced by the plaintiff against the defendant mark Matthews etc. for the fraud committed upon the plaintiff when she was induced to accept and consent to the execution of the property settlement agreements, on or about the 1st day of November, 1958 did purport to assign and transfer the aforesaid rapid messenger service, the said business, together with all the accounts, accounts receivable, good will, fixtures and rolling stock of which defendant mark Matthews etc. was the sole and equitable owner for many years prior thereto, to the corporate defendant herein, rapid messenger service, INC.
It is well settled that in an action by a former wife against her former husband to set aside various conveyances on the ground of fraud as to the former wife, to whom husband owed arrears of alimony, husband’s assignment of his interests in real and personal properties subsequent to the wife’s discovery of the fraud may be set aside as neither bona fide nor made in due course but as deliberately contrived and designed to put the true interests of the defendant husband’s assets beyond the reach of the court in the enforcement of the plaintiff wife’s rights. (Pearce v. Pearce, 129 N. Y. S. 2d 415; Enthoven v. Enthoven, 167 Misc. 686, affd. 256 App. Div. 813, supra.)
Moreover, paragraph “ Thirty-fourth ” of the complaint states that defendant Mark Matthews, etc., is no longer the sole and equitable owner of Rapid Messenger Service and that he caused the stock of Rapid Messenger Service, Inc., to be issued to one or more of the defendants herein without a fair consideration. Paragraphs “ Thirty-third ” and “ Thirty-fourth” of the complaint are admitted by defendant Mark Matthews’ following testimony given at a hearing in Children’s Court on December *927 18,1958, before the Honorable Walter L. Terry, County Judge, Acting Children’s Court Judge:
Q. Is the Rapid Messenger Service individually owned by you or is it a corporation? A. It’s a corporation now.
Q. Since when has it been a corporation? A. It’s been incorporated as of November 1st because there was new legislation, I believe-
Q. I’m not interested “ why All I asked you was, when was it incorporated ? A. It’s something about corporations getting better taxes.
Q. What is the exact name of this corporation? A. Rapid Messenger Service, Inc.
Q. Is i! a New York corporation? A. Yes.
Q. Nov, you owned that business individually prior to November 1st? [1958] A. Yes.
ME. pitaro : I want to call the Court’s attention that we had, assurance here before the Court, which is reflected in the minutes, that nothing would be transferred from Mr. Matthews’ holdings or interests-
o o o
Q. But originally, you were the owner of your business alone, were you not? A. Yes.
Q. Now, to whom did the other interest in Rapid Messenger Service go? Who are the other stockholders? A. My general manager, Mr. Ted Schwartz: [theodore sohwartz, defendant herein] that’s the only one.
Q. He’s the only other stockholder, other than yourself? A. That’s right.
Q. What is the amount for which your particular business, which we’re discussing now, was sold for to the new corporation? A. I’m sorry. I don’t understand the question.
Q. You were in business individually; you were running an individual business? A. That’s right.
Q. You transferred it to a corporation of which you’re not now the sole stockholder? A. I am.
Q. Por what amount? You are or you’re not? A. I wouldn’t say, the sole stockholder.
Q. How many shares of stock did the corporation have issued? A. Honestly, I don’t know. I’ll have to speak to my accountant.
Q. You don’t know? A. I honestly don’t know.
Q. How much was it sold for to the corporation? A. It was sold — it was ■more or less transferred or the corporation was formed became we were in business. I don’t know how it’s done. There wasn’t an actual buying and selling. It was jmt started as a corporation.
Q. Did Mr. Schwartz buy any stock in this corporation. A. I’ll have to speak to my accountant about that. I don’t know.
• • •
Q. Are you an officer, director or stockholder of any other corporation? A. I am, I believe; we have a subsidiary of a motor service. I may be. I think I’m an officer there, too.
Q. What is this motor service, please? Tell the Court about it. A. It’s a part of the Rapid Messenger Service which is called “rapid motor service”.
Q. It is a corporate entity or is it a subsidiary? What is it? A. I believe it’s a corporate.
Q. Who owns the stock of the corporation? A. It’s on the same basis as the Rapid Messenger Service.
Q. Let me put it more specifically. You now have two corporations, the Messenger Service and the Rapid outfit? A. Yes.
*928 Q. Do you own as much of the stock of one as the other or does the parent company own all the stock of the subsidiary? A. I own most of the stock in both corporations.
Q. Who owns the balance of the stock in the second corporation? A. I believe it’s Mr. Theodore Schwartz again.
Q. Do you know? A. Will you please speak to my accountant? I wouldn’t know exactly. I’m almost positive- — I would say Mr. Schwartz is the only other stockholder.
Q. Do you know the proportions between your ownership and his? A. I would say he has a very, very small percentage of the stock.
Q. Do you know what he paid for the stock? A. I have no idea.
Q. No idea? A. He may have paid nothing for it.
Apropos of the above testimony, the answering affidavit of defendant Theodore Schwartz submitted in opposition to this motion fails to deny that he acquired the stock of Rapid Messenger Service, Inc., and its subsidiary, without payment of consideration.
After careful review of the testimony and documentary evidence, this court is of the opinion that the only purpose for the transfer of Rapid Messenger Service, solely owned by defendant Mark Matthews, etc.-, prior to November 1, 1958, a resident of the State of Florida, to a newly-created corporation, defendant Rapid Messenger Service, Inc., and its subsidiaries was the desire on the part of the defendant Mark Matthews to strip himself of all attachable assets within the jurisdiction of this State and place them beyond the reach of this plaintiff and this court so that her claim for future monthly allowance for maintenance and support fixed by the agreement of separation, pursuant to Exhibit “ B ” attached to the complaint, be rendered unenforcible. (Enthoven v. Enthoven, supra; Livermore v. Boutelle, 77 Mass. 217.)
Moreover, the complaint is not limited to the sole question of the true ownership of Rapid Messenger Service in New York and its subsequent transfer to defendant Rapid Messenger Service, Inc., and its subsidiaries, but it embraces “ any and all business interests, stocks, bonds, real estate, investments, notes receivable and all other interests ’ ’ which defendant Mark Matthews fraudulently and without true and eqnitable consideration transferred to the other defendants herein, or one or more of them, for the sole purpose to hinder, delay, conceal his assets from the plaintiff and to defraud her.
(2) As to premises known as 20 East 93rd Street in the Borough of Manhattan, County, City and State of New York, in which title is vested in defendant 20 E. 93rd St. Corp., and premises known as 14 East 92nd Street in the Borough of Manhattan, County, City and State of New York, in which title is *929 in the name of defendants 14 E. 92nd St. Corp. and/or Joseph Matthews and/or Rose Matthews, the affidavit submitted in support of the instant motion contains the following testimony given by defendant Joseph Schusheim, also known as Joseph Matthews, in an examination before trial of this action held before the Honorable Frank F. Adel, a Special Referee of this court, on April 25, 1960, pursuant to the order of Mr. Justice Hogan :
Q. Did your brother [mark Matthews] ever advance any funds to you for purchasing any real estate? A. He has loaned me money at times, yes.
Q. Would you tell us on what occasions he has lent you money and what amounts ? A. He has loaned me money whenever I needed it.
Q. And that has been a continuous course of loans? A. Continuous course of loans?
Q. Yes. A. It was at the time I needed it, yes.
Q. Could you tell us when was the first time he lent you money for the purchase of real estate? A. Yes.
Q. When? A. I think in ’50 or ’49.
Q. In 1950? A. Yes.
Q. Could it have been at anytime prior to 1950 that he lent you money for the purchase of real estate? A. He might have loaned me some money, but I wouldn’t know. It could have been before ’50. (The witness referred to papers) A. (Continuing) I think it was the 16th of May, 1949.
Q. That you purchased this building, is that correct? A. Yes. That was the legal contract on the building.
Q. And that building is 23 East 93rd Street? A. No, it’s 20 East 93rd Street.
• • •
Q. Now, after this purchase, did you purchase any other buildings or real estate with funds lent you or advanced to you by your brother Mark Matthews ? A. I think I bought another building.
Q. Could you tell us when and which building? A. Can I just ask my attorney a question for a moment?
the witness: Would the title policy be the date of the building?
mr. naiman (Attorney for witness): Yes.
A. Well, this policy title is dated February 1,1950.
Q. And what premises is that, Mr. Matthews ? A. 14 East 92nd Street.
Q. Did your brother Mark Matthews at any time endorse any notes or put any collateral up as security for you in this venture ? A. He loaned me money.
Q. I didn’t ask you if he loaned you money. I asked you if he at any time endorsed any notes or put up any collateral or securities for you in this venture. A. Well, he loaned me money. I don’t know what you mean by endorsed notes. He might have guaranteed the money I borrowed from Evelyn Hauben.
Q. How much of a loan was that? A. That was $10,000. at 6% interest.
Q. And you said he might have guaranteed the repayment of that loan? A. Yes.
Q. 20 East 90th Street. That’s now owned by a corporation, is that correct? A. The 20 East 93rd St. Corporation.
Q. And is Mark Matthews in any way a stockholder or officer of said corporation? A. There are only two stockholders — Arthur Shaw and Joseph Matthews.
Q. Now, 14 East 92nd Street, is that now a corporation? A. No. That’s owned by me individually, Joseph Matthews.
*930 Q. And the money which you borrowed from Mark Matthews on that to complete that venture, did you repay it to him? A. Absolutely.
Q. Did you repay it to him with interest? A. I don’t think I did. I don’t think I gave him interest.
Q. Did you repay the money borrowed from him in full? A. Yes.
Q. Do you have any books of account? Would you have any books of account here to indicate the loans received by you from Mark Matthews and the times and amounts when you repaid them? A. No; I don’t have that.
Q. Did you have any such books of accounts? Would you have any such books of account at your office? Would you have any records indicating the times and amounts of money he advanced you for the purpose of going into those projects and the times and amounts when you repaid them? A. No, no. It wasn’t such a big operation that I had to have books with him. He loaned me money. When I had the'money, I repaid it to him.
Q. Would you recall if when he loaned you money, he advanced it to you by form of cash or by cheek? A. Both.
Q. And do you recall when you repaid him, whether you repaid him in the form of cash or by check? A. Both.
Q. And the amounts which you repaid in the form of check, would you have the cancelled checks ? A. I don’t think so.
Defendant Joseph Schusheim (Matthews), in his answering affidavit fails to incorporate any documentary evidence, agreements, etc., indicating payments and repayments made by defendants 14 E. 92nd St. Corp. and/or 20 E. 93rd St. Corp. and/or Joseph Schusheim (Matthews) and/or Bose Matthews to defendant Mark Matthews. Nor does he deny his testimony (supra). It is incredible that a corporation owning real estate does not have any books of accounts indicating repayments of loans. It is admitted by defendant Joseph Schusheim (Matthews) that defendant Mark Matthews did help him purchase his interests in the ownership of the said buildings. He further testified before the Honorable Frank F. Adel that his income from the practice of architecture, which was his only source of income prior to the purchase of the said buildings, amounted to $3,860.47, all prior to the execution of Exhibits “ B ” and 11 C ” attached to complaint. Moreover, it is admitted by defendant Joseph Schusheim (Matthews) that he received from defendant Mark Matthews “a continuous course of loans” and, further, that defendant Mark Matthews guaranteed the money which defendant Joseph Schusheim (Matthews) and/or 14 E. 92nd St. Corp. and/or 20 E. 93rd St. Corp. borrowed from defendant Evelyn Hauben.
The documentary evidence and the testimony of the defendants produced by the plaintiff in her moving papers have not been successfully rebutted at this stage of the proceedings by the defendants. A conveyance made without consideration at a time when a defendant is indebted to a creditor raises the presumption that the conveyance was made with an intent to cheat *931 and defraud the grantor’s creditors and that is fraudulent. Thus, it is incumbent upon the defendants (grantees) to show they were purchasers for value and in good faith, and that they had no knowledge of facts which put them upon inquiry as to defendant Mark Matthews ’ intent. (Gilmour v. Colcord, 96 App. Div. 358; Bailey v. Fransioli, 101 App. Div. 140; Lawrence Brothers, Inc., v. Heylman, 111 App. Div. 848, affd. 189 N. Y. 573.) No contradictions, explanations or evidence has been offered by the said defendants to overcome this presumption. ‘ ‘ The fact of notice or knowledge may be inferred from circumstances ”. (Parker v. Conner, 93 N. Y. 118, 124.)
(3) As to Colony Liquor Store located at 35-65 84th Street, Jackson Heights, Queens, which is allegedly owned by defendants Philip Hauben and Paul Wayne, Paul Wayne is the husband of defendant Florence Wayne, etc., sister of defendant Mark Matthews. By the testimony of defendant Mark Matthews and defendant Joseph Schusheim (Matthews) it is indicated that defendant Mark Matthews fraudulently conveyed his business known as Rapid Messenger Service to his sister, defendant Florence Wayne, and his brother Joseph Schusheim (Matthews) without consideration, solely as a “token transfer” {supra). The plaintiff, in her moving papers, has submitted photostatic copies of five checks totaling $6,678.70, payable to cash, four of which were cashed by defendant Paul Wayne and one by defendant Florence Wayne, signed by defendant Mark Matthews, within a period of approximately one month, which the plaintiff alleges, upon information and belief, was part of the funds transferred to the defendants Wayne by defendant Mark Matthews to purchase a liquor business now known as Colony Liquor Store, in which plaintiff believes defendant Mark Matthews has a silent and equitable interest. This allegation has been denied by defendant Paul Wayne but no justifiable reason for the transfer of said funds has been given by any of the defendants herein. Defendant Paul Wayne states that the said liquor store was purchased approximately six months after the transfer of the said funds to him and that he used his own money for the purchase of the said liquor store and that he still has the bankbooks from which the funds of his one-half share of the business was purchased. However, he fails, in his answering affidavit, to produce such evidence (bankbooks). Moreover, the plaintiff, in her reply affidavit, attempts to rebut defendant Paul Wayne’s answering affidavit by submitting sworn testimony of defendant Mark Matthews given in an examination before trial pursuant to an order of Mr. Justice Cobtlanb Johnsoit in which defendant Mark Matthews stated that defendant Paul Wayne was employed *932 by Rapid Messenger Service as a general office worker prior to Ms purchase of the liquor business and made the explicit statement:
Q. 486a. And how much did he [patjl wayne] receive as an office employee while he worked for Rapid Messenger Service? A. Approximately $40. a week.
Plaintiff also submitted in her reply affidavit a photostatic copy of a check made by defendant Mark Matthews payable to the State Liquor Authority in the sum of $175, dated August 2, 1945, which was deposited to the credit of the Comptroller of the State of New York, account of the Alcoholic Beverage Control Board, License Account. On the left-hand corner of said check is written * ‘ L-699 ’ ’ and printed ‘ ‘ Nassau ’ ’ and on the upper left-hand corner bears the following notation, “ 06L699-35 ”. But the plaintiff fails to submit further documentary evidence to substantiate that this check was used in any manner to obtain the license now used by the Colony Liquor Store, either by a transfer or otherwise.
In exercising its discretion for the appointment of a receiver pendente lite, the court must be very cautious and circumspect. However, this court cannot disregard the showing in plaintiff’s affidavits and exhibits. It is sufficient to say that, in the court’s opinion, the plaintiff has sufficiently presented facts justifying the granting of her motion for the appointment of a receiver pendente lite of all of the properties itemized in the notice of motion except “ Colony Liquor Store ” and for a restraining order preventing the transfer by the defendants of any properties constituting in whole or in part the subject matter of this action. The plaintiff has shown by clear and convincing proof facts warranting the appointment of a receiver pendente lite of the properties involved herein, except “ Colony Liquor Store ”, pursuant to article 10 of the Debtor and Creditor Law and it sufficiently appears that there is a grave danger of its transfer or other disposition pending the determination of this action, a conclusion which is supported by the disposition concededly already made by the defendant Mark Matthews of a large portion thereof without consideration and for the obvious purpose to hinder, delay and defraud the said plaintiff. Moreover, there is a danger that said properties and control will be removed beyond the court’s jurisdiction during the pendency of this action. It appears as well that, unless the relief sought is granted, a final judgment in favor of the plaintiff will be ineffectual. The court is of the further opinion, therefore, that the interests of justice will be best served by the appointment of a receiver of the properties involved in this action, except “ Colony Liquor Store ”, *933 pending the trial of this action itself and requiring the defendants herein to turn over to said receiver all of the properties involved herein and as itemized in the notice of motion, except “ Colony Liquor Store ”, which is still in defendants’ possession and control.
Plaintiff’s motion is, therefore, granted in all respects except to her motion addressed solely to 2 ‘ Colony Liquor Store ’ ’. That part of the motion is denied with leave to renew if she is so advised upon additional evidence.
Therefore, pending the trial of this action, this court retains jurisdiction for the purpose of hearing any application on the part of plaintiff concerning an application to renew, if plaintiff is so advised, for the appointment of a receiver of “ Colony Liquor Store ” allegedly owned by defendants Paul Wayne and Philip Hauben, upon additional evidence clarifying the evidence already presented, and the court will, if it deems it proper upon the occasion of such application, appoint a temporary receiver for “ Colony Liquor Store ”.