LUCY E. LIVERMORE *vs.* NATHANIEL S. BOUTELLE.
SAME *vs.* JONATHAN L. TENNEY.

A conveyance of real estate by a husband, after he has committed adultery, though before his wife has filed a libel for divorce, is void, if made to prevent her from recovering such alimony as the court may decree to her.

An equity of redeeming land from a mortgage, if conveyed by a debtor in fraud of his creditors, may be sold on execution under the Rev. Sts. *c.* 73, notwithstanding the *St.* of 1855, *c.* 453, providing for levying execution in such cases by extent.

A sale on execution of an equity of redemption, under the Rev. Sts. *c.* 73, will bar homestead rights under the *St.* of 1857, *c.* 298, unless claimed before or at the sale.

In an action to recover land conveyed in fraud of creditors, the tenant, with notice of the fraud, is not entitled to be allowed for improvements under the Rev. Sts. *c.* 101, unless he files a claim therefor before verdict.

WRITS OF ENTRY to recover lands in Fitchburg. At the trial before *Merrick,* J. there was evidence of the following facts :

On the 4th of December 1855 Charles Livermore, then the husband of the demandant, executed and delivered quitclaim deeds of the demanded premises, in which the demandant did not join, to Boutelle, the tenant in the first action, from whom Tenney, the tenant in the second action, derived his title.

Upon a libel of divorce filed by the demandant against her husband, for his adultery committed before the 4th of December 1855, all his real estate in this county, including the demanded premises, was attached on the 10th of December; and at Sep-

tember term 1857 of this court a divorce was granted and the custody of their children decreed to her, and the sum of $3000 awarded as alimony, and execution issued therefor, on which, within thirty days after the decree, the right in equity which the husband had to redeem the premises from an existing mortgage thereon was seized and sold by the officer to the demandant in the manner prescribed by statute for selling equities of redemption. The demandant offered evidence tending to show that the deed from the husband to Boutelle was colorable and fraudulent, made with the intent to prevent her enforcing any decree which she might obtain for her alimony, and accepted with knowledge of that intent and for the purpose of aiding therein ; and that Tenney took his title with notice of these facts.

At the time of the execution of the deed from Livermore to Boutelle, the premises demanded in the first action consisted of a tract of land with two dwelling-houses thereon, one of which was occupied by tenants, and the other had been previously occupied by the grantor and his wife and children as a homestead, until the 24th of November previous, when he engaged board for himself and family at another house, to which he removed a portion of his furniture and where he resided until the following spring. The demandant refused to accompany her husband in his removal, and continued with her infant child to occupy said house on the demanded premises during the daytime and to take her meals there, lodging at the house of a relative near by, until the 10th of December 1855, declaring to her husband and others, both at the time of his removal and during her subsequent occupation, her intention to maintain her residence in the house and preserve her homestead rights therein.

The tenants objected that the demandant was not a creditor, within the meaning of the statutes against fraudulent conveyances ; and that the execution for alimony should have been served by setting off the real estate, and not by a sale of the equity of redemption ; but the judge overruled both objections, and instructed the jury that if they found the above facts to be true, the demandant was entitled to a verdict in each case ; and verdicts were returned accordingly.

On the day after the verdict Tenney filed a claim for improvements made upon the land conveyed to him, after the delivery of the deed and before the levy of the demandant's execution; and made affidavit that, owing to a misapprehension of his legal rights, and his ignorance that the matter of improvements could not be arranged as well after trial as before, he had not previously informed his counsel of his having made improvements; and moved for leave to file a claim for improvements with the same effect as if filed at an earlier stage, or that the verdict might be set aside and a new trial granted, or for such other order as justice might require.

The judge reported both cases for the determination of the full court.

*P. C. Bacon & H. Chapin,* for the tenants. 1. At the time of Charles Livermore's conveyance of the demanded premises, the demandant was his wife, and had no such claim against him as would enable her to contest the validity of his conveyances as fraudulent. Her right was analogous to that of a defendant in a pending suit, who might afterwards recover judgment for costs. *Pelham* v. *Aldrich,* 8 Gray, 515.

2. Estates fraudulently conveyed can now be taken on execution only in the manner provided in the *St.* of 1844, *c.* 107; that is to say, by extent, and not by sale. *St.* 1855, *c.* 453, § 1 *Foster* v. *Durant,* 2 Gray, 540.

3. The facts show that Charles Livermore, his wife and children, at the time of the conveyance continued to have a homestead on the premises, not having, since the time when it is admitted they had one there, acquired a new one elsewhere. The execution was not therefore properly levied by a sale of the premises. *St.* 1855, *c.* 238. This homestead right was confirmed by the *St.* of 1857, *c.* 298, § 13, which is within the constitutional power of the legislature. *Sohier* v. *Massachusetts General Hospital,* 3 Cush. 483.

4. Tenney's affidavit shows sufficient ground for allowing him to prove that he held under a title which he believed to be good; and therefore for allowing him the value of his improvements, either by a new trial or in such other mode as the court

may order.· Rev. Sts. *c.* 101, §§ 19, 25.   *Cutler* v. *Rice,* 14 Pick. 494.

*C. Devens, Jr. & G. F. Hoar,* for the demandant.

THOMAS, J.   1. The first question presented in this cause is whether the plaintiff is within the protection of the St. of 13 Eliz. *c.* 5, so that the conveyance by her husband, alleged to be fraudulent, is void as against her.   This statute was for " the avoiding and abolishing of feigned, covinous and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments and executions, devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries and reliefs."   If the plaintiff was not, at the time of the fraudulent conveyance, strictly a creditor, yet the cause of divorce existing before the conveyance, and the claim for alimony being incident to or consequent upon such divorce, she was of the " others " whose just and lawful actions, suits, &c. would be delayed and hindered or defeated by such conveyance.

But if this point were doubtful, the plaintiff became a creditor of Charles Livermore by the recovery of a judgment against him, and it is well settled law that a conveyance, fraudulent under St. 13 Eliz. *c.* 5, is void and of no effect against subsequent as well as against existing creditors.   *Parkman* v. *Welch,* 19 Pick. 231, & cases cited.

2. The second question raised by the report is, whether the execution of the plaintiff could be levied by a sale of the equity of redemption of the estate fraudulently conveyed, or whether a levy by setting off the land was indispensable.   Under the Rev. Sts. *c.* 73, the election of modes of levy is open.   This election is not, we think, impaired by the *St.* of 1855, *c.* 453.   This statute is, it seems to us, but a modification, as to the return of the officer, of the *St.* of 1844, *c.* 107.   That statute was enacted to reach a class of cases not within the scope of previous statutes, where real estate, or any right or interest in real estate, has been in fact purchased by a debtor or with his money, and

the title either retained by the vendor or conveyed to a third person for the fraudulent purpose of securing it from attachment by the creditors of the purchaser. In the class of cases provided for by that statute, the legal title was never in the debtor, and no levy could be made upon the land by his creditor. *Howe* v. *Bishop*, 3 Met. 26. It was probably the decision in that case which led to the legislation of 1844. The remedy by the *St.* of 1844, *c.* 107, was new, and this court held, in *Foster* v. *Durant*, 2 Gray, 540, must be strictly followed. The cases covered by previous legislation were those where, the title being in the debtor, he sought to alienate the estate for the purpose of defeating creditors and others having just and lawful claims, not where, as against such creditor and others, the conveyance was held to be void and of no effect, and the estate to remain as if the conveyance had not been made.

. 3. It is said the execution was not properly levied by a sale of the premises, because the estate conveyed to the tenant was subject to a homestead. *St.* 1857, *c.* 298. Without deciding whether a homestead was acquired (though of this no question is made), or whether it was continued in the husband or wife, it is sufficient for this case to say that it does not appear, nor is it claimed, that the tenant in this action or Charles Livermore made any claim that the estate was exempted under the *St.* of 1857, *c.* 298, § 15, and that where no such claim intervenes, the officer may well make the sale.

4. Tenney claims his betterments, not on the ground that the premises had been actually held for six years, for such was not the fact, but on the ground that he held them under a title which he had reason to believe good. Rev. Sts. *c.* 101, §§ 19, 20. But the claim was not made until after verdict, and is clearly too late. Rev. Sts. *c.* 101, §§ 18–30. The court might possibly, in the exercise of its discretion, and to effect the ends of justice, grant a new trial in order to allow the claim to be made. But upon looking at the report with this view we do not think the ends of justice would be promoted by so doing. *Cutler* v. *Rice*, 14 Pick. 494. *Judd* v. *Gibbs*, 8 Gray, 435. *Harris* v. *Marblehead*, 10 Gray, 40.

*Judgment for the demandant.*