## First Department, February, 1921.

Gabriel Herman, Respondent, v. Louis Herman, Appellant.

*Accounting — transfer in fraud of creditors — suit in equity by transferor.*

Appeal by defendant from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of December, 1919, compelling the defendant to account in equity as plaintiff's copartner in the business of slate, tile and marble. The copartnership name was the Herman Slate Company.

Judgment affirmed, with costs. No opinion. Present — Clarke, P. J., Dowling, Smith, Page and Greenbaum, JJ.; Smith, J., dissenting.

Smith, J. (dissenting): The action is for an accounting. The defendant by answer alleges, among other things, that prior to April 24, 1916, the plaintiff, for a valuable consideration, conveyed all his rights, title and interest in the partnership business, its assets, outstanding accounts, good will and everything else thereunto belonging to the defendant. Such a bill of sale was received in evidence. The plaintiff had had trouble with his wife. She had begun an action for separation against him and in that action she had been allowed $100 for counsel fee and $25 a week alimony. In October, 1915, the wife had made a motion in the Supreme Court for the appointment of a receiver of the plaintiff's property in sequestration proceedings. This was returnable upon October 26, 1915. On the twenty-fifth day of October, the day prior to that on which the motion was returnable, this bill of sale was made. The trial court has found that this bill of sale was executed by the plaintiff to the defendant, upon the defendant agreeing to hold the said interest of the plaintiff in said copartnership intact for his use and benefit, and upon the distinct understanding and agreement that the said bill of sale was for the purpose of protecting the business, and that the plaintiff would continue as a copartner in said business and to all the rights incidental thereto. The plaintiff in his examination was asked to give the circumstances under which the paper was executed. He testified: " I had family trouble, and I was being bothered by my wife. I took it up with my brother and told him the conditions. He knew I was being troubled and being bothered. He told me to make an assignment to him of my

interests to protect the business interests between us. I say, I will consider it, and speak to my attorney about it and see what he says about it." He was then asked if he had any further conversation with his brother at the time he gave him the bill of sale. He answered: " I told him that he was to hold this only in case we were bothered in an emergency." He then swears that he signed the checks as before, that he continued supervision of the work and he carried out the same actions and performed the same work and exercised the same functions as he did prior to the execution of the paper until April, 1916. He was further asked: " Q. And you testify that the purpose of executing the paper was the result of a conversation between you and your brother to protect you against any action that your wife might take? A. Exactly. Q. And did he say that he would accept the bill of sale under those conditions? A. He did. By the Court: Q. What did he say, as well as you remember his words, or in substance? A. He said he would simply hold this in case any trouble would arise, because they would continue to do business and sign checks as if this paper had never existed." Upon cross-examination he was asked: " Q. What trouble did you expect from your wife? A. The arrears of alimony. Q. And what did you expect was going to happen with respect to the arrears of alimony? A. Sequestration proceedings. Q. The appointment of a receiver and sequestration proceedings? A. Yes. Q. You know what sequestration proceedings are, don't you? A. I think I do. Q. So as to avoid sequestration proceedings, you tell the court you and your brother had a conversation which resulted in the making of this bill of sale, is that correct? A. Yes." He was further asked: " Q. Did you or did you not give that bill of sale to your brother in order to prevent your wife obtaining anything through sequestration proceedings? A. No. Q. Now, didn't you tell the Court a moment ago that that was the object of it? A. No. Q. Did you or did you not? A. No, I did not mean it. Q. Did you or did you not use the word sequestration? A. I did not, you used it. Q. You did not use the word at all? A. No, I simply said that I gave that instrument to my brother to protect the business. Q. Against what? A. Against any troubles that might arise between me and my wife. Q. What trouble did you anticipate from your wife? A. It may possibly have been some trouble, if she would want money, but there had not been any. Q. Didn't you tell the Court before when I asked you that very question, what was the trouble, and you answered sequestration proceedings? A. That she may start." The evidence further shows that there was then accumulated alimony amounting to $255 and that upon the execution of the bill of sale there was withdrawn from the business by the plaintiff $255 which was paid to his wife in settlement of the alimony up to that date. One contention of the defendant upon this appeal is that the purpose of this transfer was to hinder and delay the wife in the collection of her alimony and that the bill of sale having been given for that illegal purpose, the plaintiff does not come into a court of equity with clean hands and the court will leave the parties where it finds them. The learned trial judge in his opinion states that the sum of $255 was a ridiculously inadequate consideration for the

plaintiff's interest in the partnership and that the plaintiff's contention as to the purpose of the bill of sale had been established. To the defendant's argument that plaintiff has not come into court with clean hands and that the transaction was illegal, the court said, in the first place, that such a defense was not pleaded in the answer, and, secondly, that if the court should give heed to this prayer of the defendant, the result would be that the defendant, by means of a participation in the fraud would largely profit. To the first proposition the case of *Landes* v. *Hart* (131 App. Div. 6) seems to be a complete answer. In that case this court unanimously held: " Objection is made that the defendant's answer contains only a general denial and that the illegality of the contract must be affirmatively pleaded. Where from the plaintiff's own proof a contract is shown to be void as contrary to public policy a general denial is sufficient." In *Sprague* v. *Webb* (168 App. Div. 292), where there was no plea in defendant's answer, this court held that where, irrespective of the pleading it appears from the evidence that the contract is opposed to good morals or sound public good, the court will, of its own motion, deny relief thereunder. It is true, further, as stated by the trial judge in his opinion, that the defendant will make large profits from the transaction, but that fact I deem immaterial in the application of this principle. The court cares nothing what may be the result of this action. · It simply denies equitable relief to a party who has attempted to put his property beyond the reach of a creditor, or of one who is liable to become a creditor. He then is confronted by the maxim of equity clearly established that the plaintiff must come into equity with clean hands. It is further contended by the plaintiff that the arrears of alimony amounting to .$255 were then paid, but that cannot be an answer to the defendant's position, because the obligation was a continuing one to pay $25 a week thereafter. This attempted subterfuge was clearly not intended to thwart the plaintiff's wife in her collection of the arrears in alimony, because the payment of those arrears was contemplated and effected by the transaction itself. The intent was clear and is practically conceded upon the trial and upon this argument that the attempt was to put this property beyond the reach of the plaintiff's wife in any proceeding she might take to enforce any alimony subsequently accruing. That the transfer made for the purpose of hindering and delaying anticipated creditors is void as to those creditors is well established, and it has been held that a conveyance made to protect the property of the transferor against the claims for alimony is void, although made before the institution of divorce proceedings. In *Livermore* v. *Boutelle & Tenny* (77 Mass. 217) it is held that a conveyance of real estate by a husband, after he has committed adultery, though before his wife has filed a libel for divorce, is void, if made to prevent her from recovering such alimony as the court may decree to her. (See, also, *Demarest* v. *House*, 91 Hun, 290; 20 Cyc. 431.) It is further urged that this conveyance was not of the plaintiff's entire property, but that he had left an interest in two pieces of real estate, and that the plaintiff cannot recover except by showing that this real estate was not sufficient to answer any claims for alimony which might thereafter accrue. The proof, however, is directly to the contrary.

It is true, as stipulated by the parties, that there were two pieces of real estate that stood in the names of Louis Herman and Gabriel Herman, the parties to this action. The plaintiff himself swears, however, that this was partnership property and treated as such, that it was purchased with partnership funds, that the rents were collected and put into the partnership account and that the expenses were paid out of the partnership business. This bill of sale which it is sought here to impeach is executed under seal and assigns: " All my right, title and interest in and to the partnership business, assets, outstanding accounts, good will and everything else, belonging to the partnership, between me and the said Louis Herman, who do business, both as the Herman Slate Co., and Hecla Slate Co., *intending hereby to sell* to said Louis Herman, *everything belonging to said partnership.*" This bill of sale as, between the parties clearly passes the legal title in this partnership real estate to the defendant. There is not one word of proof that the plaintiff after the transfer retained any property whatsoever of his own. He is specifically asked as to his other sources of income and the only other source of income which he mentioned in response to that question is income which he might receive as commissions from other parties for procuring contracts. Moreover, the plaintiff was asked upon the stand whether or not immediately after October 26, 1915, he did not fall in arrears again with his alimony, and his answer was ".' Some time later, yes. Q. Well, isn't it a fact that you paid practically nothing?" To this plaintiff's counsel objected and upon his objection only was the question withdrawn. It cannot be claimed, therefore, with his avowed intent to withdraw this property from the reach of his wife in any claim for alimony which she might thereafter have, and having transferred all his property and having been shown to have fallen in arrears in the payment of his alimony, that this instrument was not given to hinder, delay and defraud this anticipated creditor. It seems hardly necessary at this late date to cite authorities for the proposition that a transfer made to defraud creditors is good as between the parties and that a court of equity will not aid the transferor to recover back the property. In *Ford* v. *Harrington* (16 N. Y. 288) it is said: " The general rule that courts will, under such circumstances, extend no remedy to a grantor or vendor of property to recover back from the grantee or vendee the property thus transferred, although the transfer is without consideration, is too well settled to be now called in question." In that case, however, the transfer was made by a party to his attorney upon the advice of the attorney, and it was held that that confidential relation was such as to relieve the transaction of this rule in equity, because the parties were not *in pari delicto.* In *Randall* v. *Howard* (2 Black, 585) it was held in reference to just such a transaction: " A Court of Equity will not intervene to give relief to either party from the consequences of such an agreement. The maxim ' *in pari delicto potior est conditio defendantis* ' must prevail. It is against the policy of the law to enable either party, in controversies between themselves, to enforce an agreement in fraud of the law, or which was made to injure another." (Citing 1 Story's Eq. Juris. § 298 and cases.) In *Dent* v. *Ferguson* (132 U. S.

64) the same principle is held, and a quotation from the opinion of Mr. Justice Davis in *Wheeler* v. *Sage* (1 Wall. 529) says: " ' Generally, when a party obtains an advantage by fraud, he is to be regarded as the trustee of the party defrauded, and compelled to account. But if a party seeks relief in equity, he must be able to show that on his part there has been honesty and fair dealing. If he has been engaged in an illegal business and been cheated, equity will not help him.' And then, after a review of the evidence in that case, the opinion concluded in these words: ' A proceeding like this is against good conscience and good morals, and cannot receive the sanction of a court of equity. The principle is too plain to need a citation of authorities to confirm it. It is against the policy of the law to help either party in such controversies.' " The rule is also laid down as follows: " A conveyance by a debtor, deeply indebted, and in anticipation of decrees and judgments which, added to existing incumbrances, will amount to the value of the property conveyed, will lead a court of equity to presume that the instrument was executed in fraud of the creditors." It is true that an exception is made in cases between attorneys and clients and sometimes between parents and children where the conveyance was induced by the confidential relation, but there can be no such claim here asserted. The plaintiff did not make the conveyance to the copartner until he had taken advice with his lawyer and the transfer of all the property of the partnership was not induced by the confidential relation. That the parties are still *in pari delicto* is demonstrated by the reasoning in Wait on Fraudulent Conveyances (3d ed., § 401). I recommend that the judgment be reversed and the complaint dismissed.