**In re Paul J. MARIANO, Debtor.**

**No. 03–47176.**

United States Bankruptcy Court,
D. Massachusetts.

June 18, 2004.

Robert F. Casey, Jr., Esq., Robert F. Casey, Jr., P.C., Harvard, MA, for debtor.

Robert R. White, Esq., Levy & White, Lowell, MA, for Fleet Bank.

### MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter is before the Court on Creditor Fleet Bank's Objection to Debtor Paul Mariano's claim of the Massachusetts homestead exemption [# 4]. Debtor has also filed a Motion to Avoid the Judicial Lien of Fleet Bank [# 13] and Fleet filed its Objection thereto [# 15]. The Court held a hearing on Debtor's claim of exemption and Fleet's Objection thereto, at which the parties were also heard on the Motion to Avoid Judicial Lien and Fleet's Objection, and the Court took these matters under advisement.

### Background

Debtor purchased the property at 330 Pleasant St., Dunstable ("Residence") in 1972. Fleet, as successor in interest to Indian Head National Bank, holds a claim secured by an attachment issued on April 8, 1991 by the Lowell District Court.[1] An

---

1. The Court here recites that dates supplied     by Fleet Bank, as Debtor has not objected to

execution issued on April 8, 1991, and on April 19, 1991 Fleet forwarded the subject execution to the deputy sheriff with instructions to "levy and suspend" concerning the Residence. On April 19, 1991, the deputy levied on the execution, and recorded the levy in the Registry of Deeds.

In 1995, Debtor filed the first of his chapter 7 bankruptcy petitions (docket no. 95–42567). While Fleet's judicial lien was listed in that bankruptcy, Debtor did not attempt to avoid the judicial lien, and thus it survived Debtor's discharge. Subsequent to Debtor's discharge, he filed a declaration of homestead on the Residence in February of 2003. In December, 2003, Debtor filed the instant chapter 7 bankruptcy petition. According to Debtor's schedules, he owns a one-half interest in the Residence. Debtor lists the current market value of the Residence at $285,000, and the amount of secured claims against the property at $167,420.44. In his Motion to Avoid Judicial Lien, Debtor lists a first mortgage in the amount of $105,544.00, Fleet's attachment of $12,000 plus interest, and other executions in the amount of about $24,767. Debtor claims an exemption of $179,456 in the value of the property pursuant to M.G.L. ch. 188, sec. 1, the Massachusetts homestead statute.

**Analysis**

### I. *Debtor's Claim of Homestead*

In its timely Objection to Debtor's Claim of Homestead, Fleet first argues that Debtor's declaration of homestead is invalid because Debtor's interest in the Residence was "taken" by Fleet's levy on execution and thus Debtor had no interest in the Residence to which his homestead declaration could attach. Fleet directs the Court's attention to the sheriff's return on the execution which states "...I have this day seized and taken all the right, title and interest which said Judgment Debtor had, (not emempt [sic] by law from levy on execution or attachment)...."

▄▄▄ Where, as here, the Debtor has chosen state exemptions, the validity of a declaration of homestead must be resolved by an analysis of the statutory language in effect at the time of the homestead declaration.[2] *In re Garran,* 274 B.R. 570, 575 (Bankr.D.Mass.2002) (citing *Dwyer v. Cempellin,* 424 Mass. 26, 673 N.E.2d 863, 866 (1996)), *aff'd* 338 F.3d 1 (1st Cir.2003). Further, if under state law a debtor may file a valid declaration of homestead after a levy on execution, but before sale, then the declaration of homestead is valid in bankruptcy. *Myers v. Matley,* 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943) ("Our question then is whether, under the

---

these dates. In his Motion to Avoid Judicial Lien of Fleet Bank, Debtor states that the Lowell District Court issued the Writ of Attachment on January 9, 1991. This appears to be in error, as the date of entry of judgment listed on the execution issued by the Lowell District Court is March 21, 1991. The Court necessarily is concerned only with the general timing, however, and does not rely on the specific dates listed.

2. Section 522(b)(2) allows a debtor to choose between state and federal exemptions, and provides in relevant part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from

property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ... Such property is-

...

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place....

constitution and statutes of Nevada, a declaration of homestead would be effective as against a creditor to prevent a judicial sale of the property if made and recorded after levy but before sale thereunder.... Examination of the Nevada cases relied on by the court below satisfies us that the settled law of the State entitles the debtor to his homestead exemption if the selection and recording occurs at any time before actual sale under execution."). Therefore, the question before this Court is whether, under Massachusetts law, one may file a valid declaration of homestead after levy on execution but before a sale has taken place.[3] Although there is very little law in Massachusetts addressing this question, the Court is nevertheless required to determine how the Massachusetts State courts would rule if presented with the same question.[4] *See In re Tardugno,* 262 B.R. 168 (Bankr.D.Mass.2001).

■ A review of Massachusetts law reveals that Fleet's argument is without merit. The Massachusetts statute governing homestead exemptions at the time of Debtor's homestead declaration, M.G.L. ch. 188, § 1, provides that, with certain exceptions, an owner of a home, among others, may acquire an estate of homestead to the extent of $300,000, so long as he occupies or intends to occupy such home as a principal residence.[5] Under Massachusetts law, Debtor qualified as an "owner" of the Residence, now and at the

---

**3.** "A levy is the taking or seizure of property by an officer pursuant to a writ of execution." *LaChance v. Peerless,* 36 Mass.App.Ct. 451, 632 N.E.2d 856, 857 (1994) (citing *Wright v. Morley,* 150 Mass. 513, 515, 23 N.E. 232 (1890)). A levy must be followed by sale or set-off, or may be suspended. M.G.L. c. 236, §§ 6–23, 26, 31. If a levy on execution is not completed by set-off or sale within six years from the date on which notice of the execution was deposited in a registry of deeds, the levy expires and is void unless brought forward in accordance with M.G.L. c. 223, § 114A. M.G.L. c. 236, § 49A. The parties here agree that Fleet's levy was properly "brought forward" and therefore has not expired.

**4.** The Massachusetts courts have only addressed this question in a roundabout fashion in *Livermore v. Boutelle,* 77 Mass. 217, 1858 WL 6442 (1858). There, a judgment debtor argued that an execution on his residence levied by sale was improper because the residence was subject to a homestead pursuant to Mass. St. 1857, ch. 298, a precursor to the current homestead statute. The Court specifically did not decide whether a homestead had ever been acquired, but stated that because no party made a claim that the estate was exempt pursuant to the homestead statute, and where no such claim intervenes before sale, the sale was proper. *Id.* at 221. The Court thus left open the question of whether a property owner or tenant could have claimed

a homestead exemption before the sale that would have prevented a sale from occurring.

**5.** M.G.L. ch. 188, § 1 provides:

An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy such home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:

(1) sale for taxes;

(2) for a debt contracted prior to the acquisition of said estate of homestead;

(3) for a debt contracted for the purchase of said home;

(4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;

(5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;

(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

time he acquired the homestead. Debtor was not divested of title to the Residence by the levy and suspension.

■ In Massachusetts, the general rule is that, *once a levy is completed,* title vests in the levying creditor retroactively to the date of the taking. *Hall v. Hoxie,* 44 Mass. 251, 1841 WL 3479 (1841). In *Taylor v. Robinson,* 84 Mass. 562, 1861 WL 4756 (1861), the Massachusetts Supreme Judicial Court addressed the policy behind this rule in the context of a fraudulent conveyance action. It stated:

> But it is to be remembered that the purpose of fixing definitively when a levy should take effect was to determine the point in time when the title of the creditor should vest, and, by holding it to be at the date of the taking, to prevent a creditor from losing his right as against persons asserting a title to the same premises by a subsequent conveyance from the debtor, or by attachments or seizures made after the levy was commenced. Inasmuch as some time must necessarily elapse after land is taken before the levy is completed, in order to give notice to the debtor, appoint appraisers, and determine the quantity and value of the land required in order to satisfy the execution, the right of the creditor to take the debtor's land would in many cases be of little practical value or advantage, if his levy could be defeated by any title which intervened between the seizure of the land and the time when the officer could complete the proceedings and make the return. But by making the subsequent steps in perfecting the levy to have relation back to the date of the taking, the right of the

creditor is fully protected against all intervening titles ... until that time [when the land is appraised and the officer completes the service] the debtor or those claiming under him may retain the possession and use of the land, and enjoy the rents and profits; *no title or seisin passes to the creditor, nor is the execution satisfied.*

*Taylor,* 84 Mass. at 564–65 (emphasis added).

The Supreme Judicial Court further addressed when a levy is completed in *Haskell v. Varina,* 111 Mass. 84, 1872 WL 9019 (1872). In *Haskell,* a levy was begun but was suspended by reason of prior attachment. *Id.* at 85. The Court cited to the Massachusetts statute stating that the estate remained bound on the execution until the attachment was dissolved and for thirty days thereafter.[6] Where the creditor took no action after the thirty day period had run from the dissolution of the prior attachment, the attachment would be dissolved. The Court noted that " 'The officer, after taking land on execution, shall give notice thereof to the debtor, if found within his precinct, allow him a reasonable time to appoint an appraiser, and then proceed without unreasonable delay to have the estate appraised and *complete the levy* thereon;' and the levy takes effect as of the date of the seizure, if the appraisement and the completion of the levy are pursued with reasonable diligence." *Id.* at 85 (emphasis added) (citing *Heywood v. Hildreth,* 9 Mass. 393, 1812 WL 960 (1812)).

Here, Fleet has not completed the levy on the Residence and thus title had not yet vested in Fleet.[7] As the owner then,

---

**6.** Gen. Sts. ch. 133, § 50–51. This statute was the precursor to current M.G.L. c. 236, § 32.

**7.** This interpretation of Massachusetts law appears to comport with at least one other bankruptcy court's reading. Without explicitly undertaking an analysis of Massachusetts law, the bankruptcy court in *In re Aegean*

Debtor was a proper party to acquire an estate of homestead. Unfortunately for Fleet, bankruptcy intervened before it completed its levy on execution, and Fleet never acquired title to the Residence.

Moreover, because Debtor has satisfied the requirements of the Massachusetts homestead statute, the Court finds that Debtor holds a valid homestead exemption pursuant to M.G.L. ch. 188, § 1, and thus Fleet's Objection is overruled.[8]

## II. Debtor's Motion to Avoid Judicial Lien

■ Section 522(f) governs lien avoidance and provides that a debtor may avoid the fixing of a judicial lien that impairs an exemption to which the debtor would have been entitled absent the existence of the lien.[9] In order to avoid a judicial lien pursuant to § 522(f), the Court must determine: (1) that the debtor is entitled to an exemption; (2) the extent to which the lien may be avoided; and (3) whether the lien does in fact impair the exemption. *In re Betz*, 273 B.R. 313, 320–21 (Bankr. D.Mass.2002) (citing *Owen v. Owen*, 500

U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)).

First, Fleet argues that § 522(f)(1) is inapplicable here because Debtor's homestead declaration is invalid and thus Debtor is not entitled to an exemption. As discussed *supra*, the Court finds that Debtor is entitled to the Massachusetts homestead exemption, and thus the first requirement for lien avoidance is met. The Court does not address the further requirements of § 522(f) because Fleet concedes that "[w]hile the debtor's analysis under § 522(f)(2)(A) presents a cogent argument for lien avoidance in the typical action and the formula therefore allows the avoidance of the 'fixing' of a judicial lien, it has absolutely no relevancy to a lien which has already been fixed."

■ Fleet argues its lien "affixed" permanently by virtue of the fact that it survived Debtor's first bankruptcy filing, barring Debtor from avoiding Fleet's lien in his second bankruptcy filing.[10] In support of this argument, Fleet relies solely and erroneously on the reasoning of *Far-*

---

*Fare, Inc.*, 34 B.R. 965 (Bankr.D.Mass.1983), noted that where the Mass. Dep. of Revenue had liened and levied on property of the debtor, "[t]he Commonwealth's levy on these assets is merely a step towards the enforcement of its lien rights as provided by state law. The Court does not see how the Commonwealth's levy is distinguishable from the rights of a mortgagee who, on the eve of foreclosure, is stayed by the mortgagor's bankruptcy filing. Neither party–the mortgagee nor the levying creditor—has extinguished the debtor's rights in the collateral."

8. Although a party must satisfy additional requirements to the one herein discussed in order to hold a valid claim of homestead exemption-such as the requirement that the declarant intend to occupy the home as a principal residence-Fleet does not challenge the validity of the Debtor's homestead exemption on any other grounds. The valuation of the Residence has not been challenged.

9. Section 522(f)(1) provides in relevant part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs and exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is– (A) A judicial lien...

10. Fleet also argues that its lien is not avoidable by § 522(f) because it is a statutory lien and not a judicial lien. The Bankruptcy Code provides a clear definition of "judicial lien," however, which clearly encompasses Fleet's lien. Section 101(36) states " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

*rey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). In *Farrey*, the state court awarded debtor his ex-wife's interest in the family home and real estate pursuant to a divorce decree, and ordered him to make payments to his ex-wife as part of a property settlement. The ex-wife was granted a lien upon debtor's property. The debtor subsequently filed for bankruptcy and moved to avoid his wife's judicial lien. In its review of the case, the Supreme Court considered whether § 522(f) "allows a debtor to avoid the fixing of a lien on a homestead, where the lien is granted to the debtor's former spouse under a divorce decree that extinguishes all previous interests the parties had in the property, and in no event secures more than the value of the non-debtor's spouse's former interest."

In its analysis of § 522(f), the Court noted:

> ...the statute expressly states that the debtor may avoid "the fixing" of a lien on the debtor's interest in property. The gerund "fixing" refers to a temporal event. That event—the fastening of a liability—presupposes an object onto which the liability can fasten. The statute defines this pre-existing object as "an interest of the debtor in property." Therefore, unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).

*Farrey*, 500 U.S. at 296, 111 S.Ct. 1825. Moreover, the Court held that " § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." *Id.* at 301, 111 S.Ct. 1825. *Farrey* does not stand for the proposition that a lien, once "affixed" may not be avoided.

The Supreme Court's definition of "fixing" undermines Fleet's argument. Debtor here possessed an interest in the Residence before the lien attached, and may therefore avoid the "fixing" of the lien on the property. Fleet provides no other support for the proposition that a lien not avoided in a prior bankruptcy is unavoidable in a subsequent bankruptcy, and the Court can find none. Therefore, Fleet's Objection to Debtor's Motion to Avoid Judicial Lien [# 15] is overruled, and Debtor's Motion to Avoid Judicial Lien is allowed [# 13].

### Conclusion

For the foregoing reasons, Fleet's Objection to Debtor's Claim of Exemptions [# 4] is OVERRULED, and Debtor's Motion to Avoid the Judicial Lien of Fleet Bank [# 13] is ALLOWED.

A separate order shall issue.