**In re Charles Eugene MELBER and Linda M. Perry–Melber.**

**No. 03–18136–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 31, 2004.

Robert M. Proulx, Proulx Law Associates, PC, Taunton, MA, for Debtors.

Christopher Lee, Law Offices of Christopher Lee, Hopkinton, MA, Chapter 7 Trustee.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

### I. INTRODUCTION

The matter before the Court is the Chapter 7 Trustee's Objection to the Debtors' Homestead Exemption. The Court heard the Trustee's Objection, as well as two other Motions on July 20, 2004. At the hearing, the Court granted the Debtors' Motion to Amend Schedules A, C, I and J of Their Petition, through which they sought permission to amend Schedule C–Property Claimed as Exempt to claim the Massachusetts homestead exemption. *See* Mass. Gen. Laws Ch. 188, § 1. The Court, however, denied the Chapter 7 Trustee's Motion for Order, Pursuant to MLBR 1009–1, Striking Debtors' Amended Schedule C. Although the Court grant-

ed the Debtors' Motion to Amend and denied the Trustee's Motion to Strike, the Court explicitly reserved decision on the Chapter 7 Trustee's Objection to Debtors' Homestead Exemption, the validity of which is also the subject of a Complaint filed by the Debtors.[1]

The material facts necessary to decide the Trustee's Objection are undisputed. Neither the Debtors nor the Trustee requested an evidentiary hearing at the July 22, 2004 hearing, and the Debtors did not file affidavits challenging the factual assertions set forth in affidavits filed by counsel to the Chapter 7 Trustee, Christopher Lee, Esq. The issue presented is whether the Debtors have a valid homestead because Charles Melber, the original owner of residence located at 1 Ledge Road, Norton, Massachusetts (the "Property"), conveyed the Property to himself and his spouse as tenants by the entirety, during the marriage, without obtaining his wife's signature and without reserving an estate of homestead in the deed. A subsidiary issue is whether the Debtors should be precluded from asserting their homestead exemption because of unreasonable delay in claiming it and prejudice to creditors.

## II. PROCEDURAL BACKGROUND AND UNDISPUTED FACTS

The Debtors filed a voluntary Chapter 7 petition on September 30, 2003, and Donald Lassman was appointed the Chapter 7 Trustee. On Schedule A–Real Property, the Debtors listed the Property with value of $175,000 subject to a mortgage in the amount of $64,067.00. They did not claim a homestead exemption with respect to the Property on Schedule C.

In an affidavit attached to the Trustee's Opposition to Debtors' Motion to Amend Schedules A, C, I and J and Objection to Debtors' Homestead Exemption, counsel to the Chapter 7 Trustee represented that he conducted the meeting of creditors on October 23, 2003 [2] at which time he noticed that the Debtors had scheduled an interest in the Property on Schedule A but had not claimed a homestead exemption on Schedule C. He asked the Debtors to provide him with "a copy of the deeds to, and any applicable declaration of homestead on, the Real Property and recommended that, to the extent the Debtors believed they had a valid homestead, they should file an amended Schedule C."

According to Attorney Lee, on November 13, 2003, the Debtors provided him with a copy of an amended Schedule C, which was not denominated as such, on which they claimed a homestead exemption in the Property, as well as a fiduciary deed dated November 25, 1997, through which Norman Hill, Executor under the will of Carolyn Hill, transferred the Property to "Charles E. Melber, unmarried;" a declaration of homestead dated February 7, 2002 signed by Charles Melber; and a quitclaim deed dated January 8, 2003 pursuant to which Charles Melber transferred the Property to himself and his spouse, Linda M. Perry–Melber, "husband and wife, as tenants by the entirety" for a stated consideration of $1.00.

On November 17, 2003, Attorney Lee, in an e-mail to Debtors' counsel, acknowledged receipt of the amended Schedule C and the February 7, 2002 declaration of

---

1. Through their Complaint, the Debtors seek a "declaratory judgment upholding the validity of the Debtors [sic] homestead filing dated 02/07/2002."

2. The meeting of creditors was scheduled for October 27, 2003. Counsel to the Chapter 7 Trustee represented that, with the permission of the United States Trustee, he conducted the meeting four days earlier because of an emergency scheduling conflict.

homestead and requested a copy of any declaration of homestead filed *after* Charles Melber conveyed the Property to himself and Linda Perry–Melber. The next day, Attorney Lee again e-mailed Debtors' counsel, informing him that the case docket did not reflect the filing of an amended Schedule C.

Five months later, on April 14, 2004, Attorney Lee again wrote to Debtors' counsel "in connection with the estate's claim to the equity in the real property," advising him that the Debtors had never filed with the Court an amended Schedule C claiming the Property as exempt or an Amended Statement of Financial Affairs disclosing the transfer of the Property from Charles Melber to himself and his spouse within the year immediately preceding the filing of the petition. Attorney Lee also advised Debtors' counsel that unless he had "any case law or statutory authority to the contrary on the termination of the Declaration of Homestead," the Trustee intended to move to sell the Property pursuant to 11 U.S.C. § 363. In an effort to resolve the matter, the Trustee offered to sell the estate's interest in the Property to the Debtors for $140,250 based upon the Trustee's appraisal of $215,000, 5% costs of sale, and the outstanding mortgage on the Property in the approximate amount of $64,000. Attorney Lee indicated that the offer would remain open until April 23, 2004. Moreover, he suggested that the Debtors might wish to amend their Schedules B and C to claim the federal exemptions under 11 U.S.C. § 522(d).

Consistent with his position that equity in the Property existed for the benefit of the bankruptcy estate, the Trustee requested a bar date for filing proofs of claim in December of 2003.[3] Additionally, on March 15, 2004, the Debtors received their discharge.

On May 3, 2004, seven months after the Debtors filed their Chapter 7 petition, the Trustee filed an Application for Order, Pursuant to Sections 327(a) and 328, Fed. R. Bankr.P.2014 and MLBR 2014–1, Authorizing Employment of Real Estate Broker. The Debtors did not object to the Application, and former Bankruptcy Judge Carol J. Kenner granted the Application on May 20, 2004, thereby authorizing the Trustee to employ By the Sea, Inc., d/b/a RE/MAX By the Sea, as his real estate broker for the purpose of soliciting offers to purchase the estate's interest in the Property.

On May 27, 2004, the Trustee filed a Motion for Order, Pursuant to 11 U.S.C. §§ 105, 521(a)(3) and (4)[sic], Compelling Debtors to Allow Trustee's Real Estate Agent Access to Real Property Subject to Sale for Benefit of Estate, along with a request for an expedited hearing. In response to the Trustee's request for expedited hearing, the court ordered the Debtors to file a Response to the Trustee's Motion by June 2, 2004. On that date, the Debtors, for the first time, filed Amended Schedules A, C, I, and J; they did not file a response to the Trustee's Motion until June 4, 2004. On June 2, 2004, the Trustee filed his Motion to Strike in response the Debtors' amended schedules.

In their June 4, 2004 pleading, styled "Debtors [sic] Opposition to Trustees [sic] Motion for Expedited Hearing on His Motion for Order, Pursuant to 11 U.S.C. §§ 105, 521(a), Compelling the Debtors to Allow Trustee's Real Estate Agent Access

---

**3.** The Trustee filed a Report of No Distribution on October 31, 2003 just days after the meeting of creditors. He withdrew the "no-asset" report less than one month later. Parenthetically, the Court notes that on Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtors listed debts of approximately $209,000.

to Real Property," the Debtor stated that their residence was exempt under Mass. Gen. Laws ch. 188, § 1 and that they intended to file an adversary proceeding. On June 7, 2004, Bankruptcy Judge Kenner entered an order requiring the Debtors to give the Trustee and his broker access to the Property on 24 hours notice. The Debtors then filed, on June 14, 2004, an Emergency Motion for an Injunction to Prevent Trustee from Selling Real Estate During the Pendency of the Debtor's [sic] Adversary Complaint and Proceeding. Bankruptcy Judge Kenner denied the Motion for an Injunction on June 21, 2004 because the Trustee had not obtained an offer for the Property, and, therefore, a sale of the Property was not pending. She further noted that the relief requested by motion required the filing of an adversary proceeding.[4] *See* Fed. R. Bankr.P. 7001(7). In the meantime, the Debtors filed a Motion to Amend Schedules A, C, I, and J, along with another set of amended schedules, as well as an adversary proceeding.

In summary, the record in this case reveals that Charles Melber took title to the Real Property in fee simple on November 25, 1997. After he purchased the property, he married Linda Perry–Melber on February 14, 1998[5] and, subsequently, filed a Declaration of Homestead on February 7, 2002. On January 8, 2003, Charles Melber conveyed the real property to himself and his wife as tenants by the entirety. Charles Melber's signature appears on the quitclaim deed but Linda Perry–Melber's signature does not.

## III. APPLICABLE LAW

Under Massachusetts law, "An *estate of homestead* to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence." Mass. Gen. Laws Ch. 188, § 1 (emphasis supplied). "To acquire an estate of homestead in real property, the fact that it is designed to be held as such shall be set forth in the deed of conveyance by which the property is acquired; or, after the title has been acquired, such design may be declared by a writing duly signed, sealed and acknowledged and recorded in the registry of deeds for the county or district in which the property is situated." *Id.* at § 2. "The acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate." *Id.*

Chapter 188 contains an express provision for terminating a homestead. Section 7 provides:

An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods:—(1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.

*Id.* at § 7.

## IV. POSITIONS OF THE PARTIES

### A. *The Trustee*

The Trustee makes several arguments in support of his position that the Debtors

---

4. The Trustee filed an Opposition to injunction request on June 17, 2004 along with the Affidavit of his Counsel, Christopher Lee, Esq.

5. This fact is set forth in the Debtors' Memorandum.

do not have a valid homestead exemption. In the first place, he maintains that "the Debtors have abused the Court's equity by ignoring the Trustee's repeated requests that they file an amended Schedule C to address and resolve the issue over the homestead exemption...." He states that the Debtors allowed him to burden the estate with fees and costs, and permitted the real estate broker to expend time and effort, before properly asserting their homestead by filing a motion to amend their schedules. *See* MLBR 1009–1.

Referring to Mass. Gen. Laws Ch. 188, § 2 and drawing an analogy to the decision in *In re Garran*, 338 F.3d 1 (1st Cir.2003), the Trustee also contends that the estate of homestead obtained by Charles Melber prior to his marriage was terminated by the conveyance of the Property from Charles Melber to himself and Linda Perry–Melber as tenants by the entirety on January 8, 2003, because the new estate, namely the tenancy by the entirety, terminated the prior estate of homestead. Quoting *Carey's, Inc. v. Carey*, 25 Mass. App.Ct. 290, 517 N.E.2d 850 (Mass.App.Ct. 1988), the Trustee maintains that a tenancy by the entirety is a unique entity of a husband and a wife, which " 'creates one indivisible estate in them both and in the survivor, which neither can destroy by any separate act....' " *Id.*, 25 Mass.App.Ct. at 295, 517 N.E.2d at 853 (quoting *Pineo v. White*, 320 Mass. 487, 490–492, 70 N.E.2d 294 (1946)). Thus, according to the Trustee, when Charles Melber transferred the property to that new estate, the transfer had the effect of terminating the earlier estate of homestead under Mass. Gen. Laws Ch. 188, § 2.

Although the Trustee recognizes that there are no current reported cases in Massachusetts specifically pertaining to the issue before the Court, he also argues that because Linda Perry–Melber was not on the title to the Property she could not sign the deed transferring the Property to herself and Charles Melber, and § 7 cannot be read to require that she sign a transfer deed when she is a stranger to the title to the Real Property. The Trustee suggests that the statute should not be construed to require her signature to terminate a homestead because to do so would create the potential of a cloud on title, a situation which he maintains the Legislature could not have intended when it enacted § 7.

Finally, the Trustee asserts that the plain language of § 7 of the statute requires a reservation of the homestead in any subsequent conveyance. In his view, because Charles Melber did not reserve the homestead, it was terminated.

### B. *The Debtors*

The Debtors maintain that they have a valid homestead exemption in the real property. They argue that Charles Melber conveyed the real property without the express consent of his spouse, thereby denying the Linda Perry–Melber the benefits of the estate of homestead. Relying on Mass. Gen. Laws Ch. 188 § 7, they assert that a spouse's signature is necessary to terminate a homestead with a conveyance of the real property.

## V. DISCUSSION

### A. *The Validity of the Homestead Exemption*

 The United States Court of Appeals for the First Circuit interpreted Massachusetts homestead law in *In re Garran*, 338 F.3d 1 (1st Cir.2003). It stated:

Along with exemptions for certain types of personal property, Massachusetts law has established two homestead exemptions. Under § 1 of the Homestead Act,

any owner of a home may acquire "[a]n estate of homestead to the extent of $300,000 in the land and buildings." Mass. Gen. Laws Ann. ch. 188, § 1. Entitlement to a homestead exemption is not automatic under Massachusetts law. An owner of property must file the necessary declaration of homestead before the exemption can be claimed. *Id.* § 2.... Only one member of a family is permitted to file a declaration under § 1, and the filing of any member of a family protects the entire family. *Id.* § 1. The other type of homestead exemption is available only to the elderly and disabled.

*Id.* at 4–5. In addressing the interplay between a § 1 exemption declared by a non-debtor spouse and a § 1A exemption declared by a debtor to determine whether the "stacking" of these exemptions is permissible, the court added:

> [W]e must predict how the Massachusetts Supreme Judicial Court would interpret the statute. *Caron v. Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir.1996). Because homestead laws are "designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors," Massachusetts courts have "construed the State homestead exemptions liberally in favor of debtors." *Shamban v. Masidlover*, 429 Mass. 50, 705 N.E.2d 1136, 1138 (1999). Nevertheless, liberal construction does not mean that courts can extend the protection of the homestead exemptions when doing so would contradict the "plain and unambiguous" language of the statute. *See id.*[, 705 N.E.2d] at 1139 (finding the debtor's homestead declaration invalid for failure to file the proper documentation as the statute explicitly required). Consequently, we must turn to the words of the statute in question.

*In re Garran,* 338 F.3d at 6. *See also In re Mariano,* 311 B.R. 335, 337 (Bankr. D.Mass.2004)("the validity of a declaration of homestead must be resolved by an analysis of the statutory language in effect at the time of the homestead declaration.").

■ Turning to the issue in this case, namely whether the conveyance by Charles Melber to himself and his spouse as tenants by the entirety terminated the estate of homestead, the Court begins with an examination of the statutory language. The statute provides that an estate of homestead may be may be terminated by "a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead." Mass. Gen. Laws Ch. 188, § 7. The statute imposes two conditions for an effective termination: one requiring action and the other inaction, namely the signature of the owner's spouse (action), if any, and the absence of a reservation of the estate (inaction). *See generally In re Leigh,* 307 B.R. 324, 330 (Bankr.D.Mass.2004). In the instant case, the Court must predict how the Supreme Judicial Court would view Linda Perry–Melber's failure to execute the deed conveying property in which she had no interest when coupled with her husband's failure to reserve the estate of homestead he declared on February 7, 2002.

■ In *Dwyer v. Cempellin,* 424 Mass. 26, 673 N.E.2d 863 (1996), the Supreme Judicial Court considered the effect of the signatures of both spouses on a purported joint declaration of homestead. In concluding that a joint declaration of homestead by husband and wife was valid, but only as to the declarant whose signature appeared first on the declaration, it stated:

Homestead laws are based on a public policy which recognizes the value of securing to householders a home for the family regardless of the householder's financial condition. "The preservation of the home is of paramount importance because there the family may be sheltered and preserved." "Public policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home."

The obvious legislative purpose of G.L. c. 188, § 1, is to protect the home from the claims of creditors for the benefit of the homestead declarant and his or her family. We conclude that, in light of the public policy and the purpose of the statute, the State homestead exemption should be construed liberally in favor of the debtors.

424 Mass. at 29–30, 673 N.E.2d 863 (citations omitted, footnote omitted).

If the legislative purpose of homestead statute is to protect the home from the claims of creditors, and the statute is to be construed liberally in favor of debtors, this Court predicts that the Supreme Judicial Court would require the signature of a spouse, even if the spouse is not a record owner, to effectuate the relinquishment of the estate of homestead. As one commentator has recognized, "[d]espite the importance of obtaining such a release or affidavit, the issue is not always obvious. In most cases [*i.e.,* a sale to a third party] the failure to obtain the release of a non-owner spouse is a short-lived issue because the homestead is terminated by the non-owner spouse's post-sale 'abandonment' of the property." Mark W. McCarthy, "The Massachusetts Homestead Act: Throw out the Bathwater," 44 Boston Bar Journal 12, 23–24 (May/June 2000).

Attorney McCarthy, in his critical analysis of the Massachusetts homestead act, also observed that "[t]he Greater Boston Real Estate Board's standard form of purchase and sale agreement provides for the consent of a non-owner spouse to the conveyance, but this is not a provision on which the parties or their counsel focus, opening up the possibility that the non-owner spouse's signature will not always be obtained." *Id.* at 24.

In the instant case, Linda Perry–Melber failed to sign the deed or a release of the homestead, and there was no reservation of the homestead. There was, however, no conveyance to a third party and thus no manifestation of an intention to abandon the homestead. On the contrary, the inference is plain that Charles Melber was seeking to expand the protections afforded his spouse by conveying the Property to himself and to her as tenants by the entirety while simultaneously preserving the existing homestead. Attorney McCarthy recognized that "[f]or a married couple owning their home as tenants by the entirety, homestead protection is duplicative to the extent that the nature of their tenancy already protects the couple against the creditors of either of them alone." *Id.* at 25. Nevertheless, he added:

[F]iling for homestead provides such couples with the following additional protections: (i) protection from their joint creditors; (ii) protection in the event that either spouse dies, resulting in the entire interest vesting in the surviving spouse, and thereby subjecting 100% of the surviving spouse's equity in the home to the claims of his/her creditors; (iii) in the event that both spouses die, protection for the benefit of any minor children, through the age of majority for the youngest child; (iv) protection in the event of divorce whereupon

the tenancy by the entirety protection would be lost.

*Id.*

The foregoing analysis seriously undercuts the Trustee's argument, based upon the First Circuit's decision in *Garran,* that the subsequently filed estate, namely, the tenancy by the entirety, terminated the estate of homestead. Because the Court finds that the issue posed in this case can be resolved with reference to the language of § 7, however, it need not look to § 2 to resolve the issue. Not only does the language of § 7 control, the Court's interpretation is more consistent with the general directive of the Supreme Judicial Court.

## B. *Equitable Considerations*

■ Having determined that the Debtors are entitled to the homestead exemption in the Property, the Court must address the Trustee's equitable argument. The bankruptcy court has the discretion to deny the amendment of exemptions if the amendment is proposed in bad faith or would prejudice creditors. *In re Kaelin,* 308 F.3d 885, 888–89 (8th Cir.2002); *In re Michael,* 163 F.3d 526, 529 (9th Cir.1998); *In re Doan,* 672 F.2d 831, 833 (11th Cir.1982). *See also In re Snyder,* 279 B.R. 1, 6 (1st Cir. BAP 2002)(case law has established "two clear exceptions" to Rule 1009(a), which allows a debtor to amend his or schedules as a matter of course any time prior to case closure, namely prejudice and bad faith). In *Snyder,* the Bankruptcy Appellate Panel for the First Circuit observed: "Case law has also established that the prejudice need not be to the bankruptcy estate as a

whole." 279 B.R. at 6 (citing *Osborn v. Durant Bank & Trust Co.,* 24 F.3d 1199, 1206 (10th Cir.1994); *In re Blaise* 116 B.R. 398, 400–01 (Bankr.D.Vt.1990)). It added: "Prejudice to the trustee or a single creditor will suffice." *Id.* (citations omitted). Although the Trustee has not alleged that the Debtors have acted in bad faith, he has intimated that he has been prejudiced.

■ The Court finds that the Trustee has failed to establish prejudice to creditors. "Simple delay in filing an amendment where ... the case is not closed does not alone prejudice creditors. Nor does prejudice to creditors occur merely because a claimed exemption, if held timely, would be granted." *In re Arnold,* 252 B.R. 778, 786–87 (9th Cir. BAP 2000)(citing *In re Andermahr,* 30 B.R. 532, 534 (9th Cir. BAP 1983)).[6]

In *In re Arnold,* a Chapter 7 trustee retained special counsel to prosecute a personal injury claim. After the claim was settled for $200,000, the debtors amended Schedules B and C to claim an exemption in the proceeds. Although the appellate panel in *Arnold* determined that there was no bad faith or prejudice to creditors that would warrant denial of the debtors' exemption, it found there was prejudice to the trustee and the personal injury counsel he employed to prosecute the personal injury lawsuit. The court recognized that it could condition the allowance of the exemption on the payment of the trustee's fees and costs. It stated:

> Here the Trustee asked that if the bankruptcy court were inclined to allow the amended exemptions, such allowance be

---

**6.** The court in *Arnold* stated that "[p]rejudice to creditors is clearly present where they suffer an actual economic loss due to a debtor's delay in claiming his exemption. Such prejudice existed in *Grzesnikowski v. Shaffer (In re Shaffer),* 92 B.R. 632, 635 (Bankr.E.D.Pa.

1988), where one creditor did not object to previous distributions of funds to the debtors because he expected his claim to be paid out of assets that the debtors had not originally claimed as exempt." 252 B.R. at 787.

conditioned on payment of administrative expenses, including his fees.... Thus by the Trustee's own suggestion any prejudice to the Trustee ... could have been and still can be remedied. The same is true for the any allowable fees and costs of the Trustee's counsel on this appeal, and before the bankruptcy court, concerning the Arnolds' exemptions. In other words, it appears the bankruptcy court could have conditioned the allowance of the amended exemptions so as to prevent any prejudice to third parties.

A number of courts have recognized the possibility of prejudice to the trustee, and the possible prejudice from litigation costs. *[In re] Fournier,* 169 B.R. [282] at 284 [(Bankr.D.Conn.1994)]; *Blaise,* 116 B.R. at 400–02; *In re Myatt,* 101 B.R. 197 (Bankr.E.D.Cal.1989); *Roberts v. Harris (In re Harris),* 101 B.R. 210 (Bankr.E.D.Cal.1989); *In re Selman,* 7 B.R. 889 (Bankr.D.N.M.1980). However, as all but the earliest of these five cases suggest, any such prejudice can be mitigated or eliminated by conditioning allowance of the amended exemption on payment of the trustee's and counsel's fees and costs from assets not otherwise available to the estate.

It is not equitable to disallow the exemption under such circumstances. If there is no further prejudice to creditors or other third parties, the amended exemptions must be allowed.

Therefore, this panel will remand this matter to the bankruptcy court for a determination of the appropriate amount of fees and costs to which Trustee and his counsel are entitled for their services. Such amounts as the bankruptcy court determines to be reasonable, and that were incurred based on the reasonable expectation that the estate would receive the proceeds of the State Court

Action, should be paid out of the proceeds of the State Court Action in order to avoid any prejudice to Trustee or other third parties.

252 B.R. at 788–89.

 The Court finds that the Debtors in this case have not exhibited bad faith and the delay in claiming their exemption did not prejudice creditors sufficient to warrant the entry of an order sustaining the Trustee's Objection to their exemption. Nevertheless, their delay in properly claiming their exemption was prejudicial to the Trustee. As a fiduciary, a trustee is obligated to administer assets for the benefit of creditors of the Debtors' estate. Section 704 of the Bankruptcy Code requires a trustee to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704. Despite the prompting of counsel to the Trustee, the Debtors failed to claim their homestead exemption for several months. In reliance upon the Debtors' Schedules, the Trustee was obligated to administer the only asset of significant value in the Debtors' estate—the Property. Thus, he sought a bar date, employed a real estate broker, and filed a motion to compel access to the Property.

The Court finds that the Debtors' delay in properly claiming the homestead exemption was prejudicial to the Trustee and his counsel. The Trustee and his counsel were diligent and courteous in advising Debtors' counsel to properly claim the homestead exemption. He and his counsel needlessly incurred fees and expenses in 1) corresponding with Debtors' counsel, 2) employing a real estate broker, 3) filing a motion to compel access to the Property, and 4) responding to the Debtors' Emergency Motion for an Injunction. In view of the decisions in *Snyder* and *Arnold,* this Court has the authority to condition the allowance of the homestead exemption

upon the payment of the Trustee's reasonable counsel fees. Accordingly, the Court shall condition the entry of an order overruling the Trustee's Objection upon the payment of his counsel's reasonable fees and expenses associated with the above four matters.

## VI. CONCLUSION

In accordance with the foregoing, the Court shall enter an order overruling the Trustee's Objection to Debtors' Homestead Exemption, upon condition that the Debtors pay the Chapter 7 Trustee's counsel's reasonable fees and expenses as outlined above.